**Harry LEWIS, Plaintiff-Appellant,**

v.

**Al KNUTSON, et al.,**
**Defendants-Appellees.**

No. 81–1463.

United States Court of Appeals,
Fifth Circuit.

Feb. 28, 1983.

Harry Lewis, pro se.

Jackson, Walker, Winstead, Cantwell & Miller, James L. Truitt, Dallas, Tex., for Contran, Inc.

Timothy A. Duffy, Allan Brent Diamond, Dallas, Tex., for Daco Industries, et al.

Kathleen K. Spear, Valerie A. Leopold, Roger L. Taylor, Chicago, Ill., for defendants-appellees excluding Maxfield.

Before INGRAHAM, REAVLEY and POLITZ, Circuit Judges.

INGRAHAM, Circuit Judge:

This appeal arises from a shareholder derivative suit filed on behalf of Contran, Inc., alleging that the Inside Defendants—the officers and directors of Contran, the target company—breached a fiduciary duty by opposing a tender offer by Outside Defendants—the principals of Danco, Inc., the tender offeror—and that both the Inside and Outside Defendants breached a fiduciary duty by entering into a settlement agreement that wasted Contran assets. The district court determined that since a hostile tender offeror owed no fiduciary duty to a target company or its shareholders, Lewis failed to state a claim, and therefore summary judgment was granted for Outside Defendants. The court also granted Inside Defendants' motion to dismiss for lack of standing because Lewis failed to maintain his shareholder status throughout the pendency of the suit. After no Contran shareholder intervened in response to the court's notice of impending dismissal, the derivative suit was dismissed with prejudice. Lewis appeals a multiplicity of alleged errors. Finding no merit to any of these contentions, we affirm the judgment, 87 F.R.D. 478, of the district court.

## THE PARTIES

Contran, Inc. is a Delaware corporation with its principal place of business in Dallas, Texas. Plaintiff-appellant, Harry Lewis, was a Contran shareholder.[1] The district court categorized the defendants as Inside and Outside. The Inside Defendants were those associated with the target company, Contran, on behalf of which Lewis sued derivatively and the Outside Defendants were those associated with the hostile tender offeror, Danco, Inc. The named defendants that were treated as Inside Defendants were Contran; its directors and officers, Al Knutson, Phillip Hubbard, Harold Simmons, Douglas Simmons, Glenn Simmons, and Michael Snetzer; and its parent corporation and largest shareholder, Flight Proficiency Service, Inc. The de-

1. Lewis was a record owner of stock from February 5, 1969 to January 18, 1980.

fendants classified as Outside Defendants were Danco; its shareholders, James Ling, William Tinsley, Lewis Johnson, and Daco Industries, Inc.; and the shareholders of Daco, John Bertoglio, Robert Moore, Daniel Carney, and Daniel Taylor.

## THE EVENTS

Owning 14.8% of the outstanding shares of Contran common stock, Danco embarked upon a tender offer on January 17, 1978, to purchase an additional 23.3% of the outstanding stock at $35 per share. The Inside Defendants opposed this offer and neither supported nor recommended it to the Contran shareholders. The offer prompted several lawsuits, which led to the challenged September settlement. When the tender offer was completed on April 27, 1978, Danco had accumulated an additional 20.0% of Contran's stock for a total ownership of approximately 34.8%.[2] After management's nominees were reelected to Contran's Board of Directors at the annual stockholders' meeting on July 21, 1978, Danco decided to sell its Contran stock. In September 1978, Contran acquired all of Danco's Contran stock in exchange for 189,200 shares of Vornado, Inc., which is a Contran subsidiary, $1,000,000 cash, and an agreement to indemnify Outside Defendants against any claims arising from the transactions between them.[3]

## THE SUIT, THE SUBSEQUENT EVENTS, AND THE DISTRICT COURT DETERMINATIONS

On September 15, 1978, Lewis filed this shareholder derivative suit alleging that the Inside Defendants breached their fiduciary duty by opposing the tender offer for the sole purpose of preserving their management control. Lewis further charged that this was the same motivation for the proxy fight at the annual shareholders' meeting and for the purchase of Danco's Contran stock, both of which constituted waste of Contran assets. Lewis also alleged that Outside Defendants breached a fiduciary duty by participating in and benefiting from these acts of Inside Defendants. On November 15, 1979, the district court granted the Outside Defendants' 12(b)(6) motion to dismiss for failure to state a claim, which had been converted to a Rule 56 motion for summary judgment. The district court also granted plaintiff leave to file an amended complaint consistent with the summary judgment.

On November 29, 1979, Contran approved a one-for-thirty reverse stock split.[4] The split was structured so that the shareholders could choose to cash in their resulting fractional interest by selling it to the company or to round up to the next highest whole share of new common stock by purchasing fractional interests.[5] The Letter of Transmittal also informed the shareholders that they would be deemed to have elected to sell their fractional share interest if they did not respond to Contran by January 18, 1980. Although notice of the split was mailed to Lewis' address that appeared on Contran's shareholder list, which did not include a zip code, it was returned stamped "Addressee Unknown at Box Number."[6]

2. Of the Outside Defendants, only Danco owned Contran stock.

3. The aggregate value of the consideration from Contran, $6,800,000, was equivalent to the value of Danco's Contran stock, calculated at the tender offer price of $35 per share.

4. A corporation effects a reverse stock split by amending its charter to authorize the issuance of fewer shares of new stock at a proportionately higher par value. The old stock is then reclassified as a fractional interest in the new stock. In the present case, Contran's one-for-thirty reverse split caused Lewis' 10 shares to become 1/3 of a share of the new stock. Typi-

cally, a corporation will pay the shareholder cash for the fractional holding. For a general discussion of using the reverse stock split to go private, see Dykstra, *The Reverse Stock Split— That Other Means of Going Private*, 53 Chi.-Kent L.Rev. 1 (1976).

5. The fractional interest was priced at $50 per 1/30th share of new common stock, whether it was sold or purchased.

6. Although Lewis' address on Contran's shareholder list did not contain a zip code, there was evidence that Lewis had previously received a dividend check mailed to that address.

Since Lewis did not respond to the round-up offer by January 18, he was deemed to have sold his fractional interest and ceased to be a Contran shareholder.

The derivative suit was set for trial on February 11, 1980. Although the case was dismissed when Lewis failed to appear for trial, it was reinstated on March 3 and the complaint was amended on March 25. Since Lewis had lost his shareholder status on January 18, Inside Defendants moved to dismiss for lack of standing. The district court converted the motion to a motion for summary judgment and ordered oral argument for July 29. After hearing oral argument and considering affidavits and other evidence outside the pleadings, the court granted summary judgment for Inside Defendants and ordered that the remaining shareholders be notified of the imminent dismissal of the derivative action unless a shareholder intervened and prosecuted the suit. Lewis' subsequent motions for reconsideration and leave to file a second amended complaint were denied, while a protective order was granted for Inside Defendants against further discovery. After no shareholder intervened, the district court entered judgment with prejudice on August 28, 1981, and awarded costs, but not attorneys' fees, to Inside Defendants. Lewis now appeals.

## THE CONTENTIONS AND THEIR DISPOSITION

Lewis challenges virtually every action taken by the district court. For purposes of clarity, we address them in chronological order of the actions taken, dealing first with the Outside Defendants, then the Inside Defendants. In granting summary judgment for Outside Defendants, the court determined that a hostile tender offeror and its principals owed no fiduciary duty to a target company or its shareholders. Lewis contends that this determination is erroneous and that a fiduciary duty should be imposed on Outside Defendants because of their association with Inside Defendants, who owed a fiduciary duty to the minority shareholders.

■ For summary judgment, the movant must demonstrate "the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1982). The existence of a fiduciary duty is a question of law, *Harriman v. E.I. DuPont de Nemours & Co.*, 372 F.Supp. 101 (D.Del. 1974), and as a substantive right in a shareholder derivative action, *Blanchard v. Commonwealth Oil Co.*, 294 F.2d 834, 840 (5th Cir.1961), is determined according to the law of Delaware, the state of Contran's incorporation. *Rogers v. Guaranty Trust Co. of New York*, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652 (1922). Typically a fiduciary duty is imposed upon persons that exercise control over the corporation's affairs: officers, directors, and controlling shareholders. *E.g., Singer v. Magnavox Co.*, 380 A.2d 969, 976–77 (Del.1977). Since Lewis' complaint states that Inside Defendants comprise the officers and directors of Contran, we focus on whether the Outside Defendants were controlling shareholders under Delaware law.

■ Majority shareholders, those owning at least 50% of the outstanding stock, are controlling shareholders as a matter of Delaware law. *See Polin v. Conductron Corp.*, 552 F.2d 797, 808 (8th Cir.1977). Outside Defendants, however, owned no more than 34.8% of Contran's stock. Nevertheless, if a shareholder exercises *actual* control and direction over corporate management, a fiduciary duty will be imposed. *Harriman v. E.I. DuPont de Nemours & Co.*, 411 F.Supp. 133, 152 (D.Del. 1975); *Harriman v. E.I. DuPont de Nemours & Co.*, 372 F.Supp. 101, 105 (D.Del. 1974); *Judah v. Delaware Trust Co.*, 378 A.2d 624, 628 (Del.1977). Therefore, we inquire whether a genuine issue of fact existed. After the tender offer, Contran asserted its control over the corporation by reelecting management's nominees to the board of directors. Although Outside Defendants agreed to sell their Contran stock to the company, Lewis submitted no evidence indicating that Contran's decision to

buy was controlled by Outside Defendants. In short, there was no evidence to suggest that Outside Defendants exercised any actual control over the corporation. Since there was no basis for imposing a fiduciary duty on Outside Defendants, the district court did not err in granting summary judgment.

█ With respect to the Inside Defendants,[7] Lewis first attacks the conversion of the motion to dismiss for lack of standing to a motion for summary judgment.[8] "[T]he standing doctrine has its origins in 'both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.'" *O'Hair v. White*, 675 F.2d 680, 685 (5th Cir.1982) (en banc) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975)). The Supreme Court explained these two limitation aspects of standing in *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979):

The constitutional limits on standing eliminate claims in which the plaintiff has failed to make out a case or controversy between himself and the defendant. In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72 [98 S.Ct. 2620, 2630, 57 L.Ed.2d 595] (1978); *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 260–261 [97 S.Ct. 555, 560–561, 50 L.Ed.2d 450] (1977); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 [96 S.Ct. 1917, 1924, 48 L.Ed.2d 450] (1976); *Warth v. Seldin, supra* [422 U.S.] at 499 [95 S.Ct. at 2205]; *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 [93 S.Ct. 1146, 1148, 35 L.Ed.2d 536] (1973). Otherwise, the exercise of federal jurisdiction "would be gratuitous and thus inconsistent with the Art. III limita-

tion." *Simon v. Eastern Kentucky Welfare Rights Org., supra* [426 U.S.] at 38 [96 S.Ct. at 1924].

Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim....

Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one "who otherwise would be barred by prudential standing rules." *Warth v. Seldin*, 422 U.S., at 501 [95 S.Ct. at 2206]. In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered "a distinct and palpable injury to himself," *ibid.*, that is likely to be redressed if the requested relief is granted. *Simon v. Eastern Kentucky Welfare Rights Org., supra* [426 U.S.], at 38 [96 S.Ct. at 1924].

*Id.* at 99–100, 99 S.Ct. at 1607–1608. Thus, the constitutional limitation requiring an injury to satisfy the case or controversy requisite goes to the court's jurisdictional *power* to hear the case, while the prudential limitation goes to the court's administrative *discretion* to hear the case. The minimal requirements of Article III, or "pure" standing, affects significantly fewer cases than the prudential limitation because "[i]f plaintiff did not have the minimal personal involvement and adverseness which Article III requires, he would not be engaging in the costly pursuit of litigation." Scott, *Standing in the Supreme Court—A Functional Analysis*, 86 Harv.L.Rev. 645, 674 (1973). Nevertheless, the constitutional limitation continues to arise when plaintiff fails to allege a personalized injury, *e.g., Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct.

---

7. The district court's opinion dismissing the shareholder derivative suit is reported as *Lewis v. Knutson*, 87 F.R.D. 478 (N.D.Tex.1980).

8. Although Lewis raises this issue for the first time on appeal, we address it to clarify the procedural posture of the case. *See Nilsen v. City of Moss Point*, 674 F.2d 379, 387 n. 13 (5th Cir.1982).

1361, 31 L.Ed.2d 636 (1972), or when plaintiffs' injury has not fully developed into a claim or has passed.[9]

Since plaintiff must satisfy the case or controversy requirement of Article III to properly invoke the court's jurisdictional powers, standing must be resolved as a preliminary matter. In *Warth v. Seldin,* the Supreme Court outlined the appropriate procedure for this determination:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. *E.g., Jenkins v. McKeithen,* 395 U.S. 411, 421–422 [89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404] (1969). At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth v. Seldin,* 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975). This procedure encompasses two modes of standing challenges—a facial attack and a factual attack. In *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1982), we discussed these two types of attacks under Rule 12(b)(1) and how they differed from a determination under Rule 12(b)(6). *Id.* at 412–14. Further, we observed that the district court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate

bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 414. This does not completely circumscribe our review, however. In the special case where the challenged basis of jurisdiction is also an element of plaintiff's federal cause of action, the proper course of action is to limit the jurisdictional inquiry to facial scrutiny, and reserve the factual scrutiny for the merits of the cause of action. *See id.* at 415 (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed.2d 939 (1945)). If the facial attack defeats jurisdiction, the case should be dismissed under Rule 12(b)(1). If the case survives the facial jurisdictional attack, a failure of the existence of the cause of action should be disposed by a Rule 12(b)(6) dismissal on the merits. *See, e.g., Industrial Investment Development Corp. v. Mitsui & Co.,* 671 F.2d 876, 886 & n. 9 (5th Cir.1982). Conversely, if the jurisdictional challenge does not implicate the merits of the cause of action, the jurisdictional basis must survive both facial and factual attacks before the district court can address the merits of the claim. *See Williamson,* 645 F.2d at 412–15 & n. 9. Accordingly, we turn our attention to the nature of shareholder derivative suits, Fed. R.Civ.P. 23.1, to determine whether plaintiff's status as shareholder implicates the merits of the corporation's cause of action for which the plaintiff sues derivatively.

When an officer, director, or controlling shareholder breaches a fiduciary duty to the corporation, the shareholder has "no standing to bring [a] civil action at law against faithless directors and managers," because the corporation and not the share-

---

**9.** As the Court has noted, "[t]he standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists." *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975). Although *the mootness doctrine could be used in this case* because Lewis' loss of shareholder status renders any judgment for the corporation of little benefit to Lewis without a proprietary interest in the corporation, we analyze the case as a loss of standing and would reserve the mootness doctrine for the situation in which the underlying claim of the corporation becomes inappropriate for judicial resolution. See *Id.; O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Tasby v. Estes,* 643 F.2d 1103, 1105–06 (5th Cir.1981); *Winpenny v. Krotow,* 574 F.2d 176, 177 (2d Cir.1978).

holder suffers the injury. *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). "Equity [as reflected in Fed.R.Civ.P. 23.1], however, allow[s] him to step into the corporation's shoes and to seek in its right the restitution he could not demand on his own." *Id.* Nevertheless, for plaintiff to satisfy the standing requirements of Rule 23.1, he must demonstrate that he owned stock in the corporation at the time of the transaction of which he complains and throughout the pendency of the suit, which includes the bringing of the suit and its prosecution. *Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978). These ownership requirements are necessary because "[s]tanding [to bring a derivative action in behalf of a corporation] is justified only by the proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest." *Id.* at 1002 (quoting *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 735–36 (3rd Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971)). *See also Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir.1979); *Papilsky v. Berndt,* 466 F.2d 251, 255 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972). Thus, standing under Rule 23.1 concerns the plaintiff's relationship with the real party in interest, the corporation, and not the injury of the corporation. Whether this particular plaintiff or another shareholder prosecutes the corporation's claim as a representative shareholder has no effect on the corporation's cause of action. *Malcolm v. Cities Service Co.,* 2 F.R.D. 405, 407 (D.Del. 1942). The shareholder derivative suit

should be contrasted with cases in which the challenge goes both to jurisdiction and to an element of the cause of action. *See, e.g., Fragumar Corp., N.V. v. Dunlap,* 685 F.2d 127, 129 (5th Cir.1982) (determination of whether certain joint venture interests are securities within the meaning of the Securities Act of 1933 and 1934); *Thornhill Publishing Co. v. General Telephone & Electric Corp.,* 594 F.2d 730, 732–35 (9th Cir. 1979) (interstate commerce requirement of the Sherman Antitrust Act). Since Lewis' status as a shareholder and thus his standing to prosecute the suit does not overlap with the merits of the claim that Inside Defendants breached a fiduciary duty, we review the district court's determination of standing under the standards set forth in *Williamson.*[10]

 Lewis' admission that he is not presently a shareholder normally ends our inquiry. *See Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir.1978). Nevertheless, Lewis argues that the court erred in not using its equitable powers to grant him standing and not recognizing a contingent standing. Finding no support for equitable standing, *see Bernstein v. Somekh,* 452 F.Supp. 1373 (S.D.N.Y.1978), we look to Lewis' contingent standing argument. Lewis contends that the court should not have dismissed the derivative action until it determined the merits of his attack on the sale of his stock under the reverse split because if the court invalidates the sale, he would be a shareholder with standing to prosecute the derivative action.[11] Lewis relies upon cases involving invalid freeze outs, in which the Delaware courts have held that "a [short form] merger, made for the sole purpose of freezing out minority stockholders,[12] is an abuse of the corporate process [and gives

---

10. Although the district court labeled the determination a motion for summary judgment, the action was abated without prejudice to intervention by the remaining shareholders. Since the court properly treated the motion as a 12(b) dismissal, we review the action as if it were properly labeled, *see* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.02 (2d ed. 1982), and will disturb the findings only if clearly erroneous. *See Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

11. Presumably Lewis would ask the court to allow him to round up in addition to invalidating the sale and restoring his fractional ownership, since mere recovery of his fractional interest would not give him sufficient ownership to reestablish his shareholder status.

12. A valid business purpose sanctions the corporation's termination of the interest of minority shareholders. *See Zauber v. Murray Savings Ass'n,* 591 S.W.2d 932, 938 (Tex.Civ.App. —Dallas 1979), *writ ref'd n.r.e. per curiam,* 601

rise to] a cause of action for violation of a fiduciary duty for which the Court may grant such relief as it deems appropriate under the circumstances." *Singer v. Magnavox Co.,* 380 A.2d 969, 980 (Del.1977). *See Coleman v. Taub,* 638 F.2d 628 (3d Cir.1981); *Zauber v. Murray Savings Ass'n,* 591 S.W.2d 932 (Tex.Civ.App.—Dallas 1979), *writ ref'd per curiam,* 601 S.W.2d 940 (Tex. 1980) (applying the concept under Texas law). Contran's reverse stock split gave shareholders the opportunity to remain shareholders by rounding up. It protected both the value and the form of the shareholder's investment. *See Singer,* 380 A.2d at 977. Thus, Contran's reverse stock split was not in law an involuntary freeze out. Nevertheless, Lewis contends that the manner in which the split was administered made the split an involuntary freeze out in fact. Since Lewis complains of not receiving notice of the split, the remaining issue is whether Contran breached a duty in the notification process.

 Delaware allows corporations to rely upon the addresses contained in the shareholder list when notifying a shareholder of significant corporate matters. *See* Del.Code Ann. tit. 8, §§ 222(b), 262(b)(2) (1974 & 1977); *In re Northeastern Water Co.,* 28 Del.Ch. 139, 38 A.2d 918, 923 (1944). Moreover, Contran's by laws places the duty on the shareholder to notify the corporation of their post-office address. Contran submitted a copy of the shareholder list as it appeared on the mailing date of the notices and the address corresponded with the one on the notice mailed to Lewis. Lewis, however, submitted no evidence demonstrating that he had notified the corporation of any other address. Finding no support for imposing a higher duty when notifying minority shareholders, the district court correctly determined that Contran had not breached a fiduciary duty in administering the re-

verse stock split. Consequently, the district court's findings that Lewis was not a shareholder and did not have a cognizable claim for contingent shareholder status are not erroneous and we conclude that the dismissal for lack of standing was proper.

 Lewis' next contention is that the district court erred in not allowing him to amend his pleadings to cure the standing defect. Lewis' proposed second amended complaint is actually a supplemental pleading,[13] but the discretion exercised in deciding whether to grant leave to amend is similar to that for leave to file a supplemental pleading. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1504 (1971). As we have recently stated, "[t]he decision whether justice requires amendment is committed to the discretion of the district judge, reversible only for an abuse of discretion." *Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, 121 (5th Cir.1982) (citations omitted); *Daly v. Sprague,* 675 F.2d 716, 723 (5th Cir.1982). In exercising its discretion, the district court should consider whether permitting the pleading would cause undue delay in the proceedings or undue prejudice to the nonmovant, the movant is acting in bad faith or with a dilatory motive, the movant has previously failed to cure deficiencies by prior pleadings, or the proposed pleading is futile in that it adds nothing of substance to the original allegations or is not germane to the original cause of action. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1163 (5th Cir.1982); *Carson v. Polley,* 689 F.2d 562, 584 (5th Cir.1982).

 In the present case, Lewis filed a motion for leave to amend over five months after the occurrences of which he complains. Further, the motion was filed after his first amended complaint and after Inside Defendants moved to dismiss for lack of standing, both of which occurred after

---

S.W.2d 940 (Tex.1980); *Teschner v. Chicago Title & Trust Co.,* 59 Ill.2d 452, 322 N.E.2d 54 (1974), *appeal dismissed,* 422 U.S. 1002, 95 S.Ct. 2623, 45 L.Ed.2d 666 (1975). *Cf. Tanzer v. International General Industries, Inc.,* 379 A.2d 1121 (Del.1977) (requiring a fairness hearing to determine if the business purpose is bona fide). We need not resolve whether Contran

had a valid business purpose for the reverse stock split because the round up provisions kept the action from being a freeze out subject to the valid business purpose justification.

**13.** *Lewis v. Knutson,* 87 F.R.D. 478, 481 n. 5 (N.D.Tex.1980). *See United States v. Vorachek,* 563 F.2d 884, 886 n. 1 (8th Cir.1977).

the reverse stock split. Moreover, Lewis failed to include these allegations in the first amended complaint. In addition to reiterating the original allegations, the proposed pleading asserted a class action claim for violations of securities laws. As discussed earlier, Lewis' proposed theory of contingent standing, which is asserted in the proposed class action counts, fails to cure the standing defect. Consequently, the district court did not abuse its discretion in denying leave to supplement.

■ Similarly, we find that the district court did not abuse its discretion by not reconsidering the dismissal or by granting defendants' motion for a protective order. As support for the motion to reconsider, Lewis asserted a need for further discovery. We note, however, that Lewis neither requested more time for discovery before the hearing, Fed.R.Civ.P. 56(f), nor showed excusable neglect in failing to complete discovery in the allotted time. Fed.R.Civ.P. 6(b). Since the matter was determined after all parties had an opportunity to present their case, we do not find that the district court abused its discretion by refusing to reconsider or by granting the protective order.

■ Finally, Lewis contends that the district court erred in approving notice to the remaining shareholders of the imminent dismissal of the derivative suit. The law, however, is contrary to Lewis' contention. Rule 23.1 requires that the remaining shareholders be given notice of a proposed dismissal of the derivative action. Fed.R. Civ.P. 23.1. As discussed earlier, Lewis' failure to round up constituted a voluntary sale of his stock. Since a voluntary sale of stock leads to a dismissal of the suit, notice was required. 3B J. Moore, *Moore's Federal Practice* ¶ 23.1.24 (2d ed. 1982); *see Tryforos v. Icarian Development Co.*, 518 F.2d 1258, 1263 (7th Cir.1975), *cert. denied,* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976). Unless the shareholders are given notice, the dismissal must be without prejudice. *E.g., Cramer v. General Telephone & Electric Corp.*, 582 F.2d 259, 268–269 (3d Cir.1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Grime v. Applied Devices Corp.*, 78 F.R.D. 431, 432

(E.D.N.Y.1978) (citing *Papilsky v. Berndt,* 466 F.2d 251 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972)). When the remaining shareholders are given notice and the opportunity to prosecute the claim through intervention, their interests are not sacrificed by dismissal with prejudice. *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1840 (1972). Moreover, the dismissal with prejudice protects the interests of the corporation by terminating the litigation, while notice protects the interests of the shareholders. *See Papilsky v. Berndt,* 466 F.2d 251 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *Colan v. Monumental Corp.,* 524 F.Supp. 1023, 1024–26 (N.D.Ill. 1981); 3B J. Moore, *Moore's Federal Practice* ¶ 23.1.24 (2d ed. 1982). The district court's notice to the remaining shareholders was not only proper, it was necessary to protect the interests of both the corporation and its shareholders.

Since appellant's contentions are without merit, the judgment of the district court is AFFIRMED.