WILLIAM ASHBURN v. PHILLIP D. WICKER AND RIVWIN, III, A NORTH CAROLINA CORPORATION

No. 881SC1056

(Filed 15 August 1989)

**Corporations § 6— loan made by corporation—plaintiff not holder of beneficial interest—no standing of plaintiff to challenge**

Plaintiff did not have standing to challenge a loan made by the corporate defendant to the individual defendant when plaintiff's beneficial interest, if any, in defendant corporation consisted of a pledge of stock which secured a debt which was paid by another pledgee of the stock before plaintiff filed suit. N.C.G.S. § 55-55(a).

APPEAL by plaintiff from Judgment of *Judge Herbert Small* entered 18 May 1988 in PASQUOTANK County Superior Court. Heard in the Court of Appeals 14 April 1989.

*George S. Jackson for plaintiff appellant.*

*Hornthal, Riley, Ellis & Maland, by L. P. Hornthal, Jr., and John D. Leidy, for defendant appellees.*

ASHBURN v. WICKER

[95 N.C. App. 162 (1989)]

COZORT, Judge.

Plaintiff sued defendant Wicker claiming that he wrongfully used funds of the defendant corporation to acquire its stock. The stock had been pledged to both plaintiff and defendant as security for separate loans each made to an employee of the corporation who used the funds to purchase the shares. In the first half of a bifurcated proceeding from which plaintiff took an appeal which was later abandoned, the trial court ruled that the debt owed plaintiff was paid, that plaintiff's interest in the stock was extinguished, and that defendant was entitled to possession of the stock. We hold that plaintiff now has no standing to challenge the loan made by the defendant corporation to defendant Wicker.

In 1984, defendant Wicker sold 100 shares of stock in defendant RIVWIN, III, Ltd., to George Sawyer for $25,000.00. Sawyer was named as a defendant in this proceeding, but plaintiff has voluntarily dismissed the action against him. To pay a down payment on the stock, Mr. Sawyer borrowed $11,500.00 from plaintiff, who was then Mr. Sawyer's brother-in-law. Mr. Sawyer pledged the stock purchased from defendant Wicker to plaintiff as security for the loan. He also entered into a contract with plaintiff which provided that, in the event of Mr. Sawyer's default, plaintiff was entitled to possession of the shares if the $11,500.00 note was not paid in full within 30 days of plaintiff's giving Sawyer written notice of his default. Moreover, if Mr. Sawyer defaulted, the defendant corporation agreed to buy back from plaintiff for $25,000.00 those shares he acquired as a result of the default.

For the remaining purchase price defendant Wicker received a promissory note from Mr. Sawyer for $13,500.00 and a pledge of the 100 shares of stock. The parties agreed that plaintiff's security interest in the stock would have priority over defendant Wicker's security interest.

In 1985, Mr. Sawyer was discharged from his employment with the defendant corporation. On 30 July 1985, plaintiff gave Mr. Sawyer written notice of default and stated his intention to take possession of the 100 shares if Mr. Sawyer's debt was not paid. The next day defendant Wicker tendered full payment, with interest, of Mr. Sawyer's debt to plaintiff; but plaintiff refused to accept defendant's payment. Defendant Wicker had obtained a loan from the defendant corporation to pay off Mr. Sawyer's obligation.

In 1986, plaintiff filed suit claiming that he was entitled to possession of the 100 shares of stock in the defendant corporation and that defendant Wicker wrongfully deprived plaintiff of his right to sell the stock back to the defendant corporation at a substantial profit. The parties consented to a bifurcated trial. The first trial concerned whether plaintiff was entitled to possession of the stock. In a bench trial the trial court ruled that plaintiff had to accept defendant Wicker's payment of Mr. Sawyer's debt, that defendant Wicker was entitled to redeem the collateral, and that defendant Wicker was entitled to keep the shares in satisfaction of his secured claims against Mr. Sawyer. Plaintiff gave notice of appeal but later abandoned his appeal and cashed the check defendant had written to pay Mr. Sawyer's obligation.

In this the second half of the bifurcated trial, plaintiff seeks to challenge the loan the defendant corporation made to defendant Wicker which allowed Mr. Wicker to pay Mr. Sawyer's debt and to gain control of the stock. At the close of plaintiff's evidence, the trial court granted defendants a directed verdict. The issue before us is whether plaintiff had standing to challenge the loan made by defendant RIVWIN III, to defendant Wicker when plaintiff's beneficial interest, if any, in the defendant corporation consisted of a pledge of stock which secured a debt that was paid by another pledgee of the stock before plaintiff filed suit.

The standard of review on a motion for directed verdict is whether, viewing the evidence in a light most favorable to plaintiff, no reasonable juror could find for plaintiff. *West v. Slick*, 313 N.C. 33, 40-41, 326 S.E.2d 601, 606 (1985).

Initially, we note that plaintiff cannot now claim that he was a *de facto* shareholder and, therefore, that he held a beneficial interest and should be entitled to sue. Plaintiff abandoned his right to challenge the trial court's first judgment in the first trial when he abandoned his appeal of that judgment. That judgment had the effect of ruling that plaintiff held no beneficial interest in the defendant corporation. The trial court ruled that plaintiff was entitled to payment of Sawyer's debt and defendant was entitled to keep the stock because he paid Sawyer's debt. Since no appeal was perfected from that ruling, the findings and conclusions from the first trial are binding on this appeal because they represent the law of the case. *North Carolina National Bank v. Barbee*, 260

N.C. 106, 112, 131 S.E.2d 666, 671 (1963); *Duffer v. Royal Dodge, Inc.*, 51 N.C. App. 129, 130, 275 S.E.2d 206, 207 (1981).

N.C. Gen. Stat. § 55-55(a) provides that "[a]n action may be brought in this State in the right of any domestic or foreign corporation by a shareholder or *holder of a beneficial interest in shares of such corporation . . . .*" (Emphasis added.) Defendants concede, and we agree, that a pledgee of corporate stock has a sufficient beneficial interest to have standing to sue the corporation derivatively for mismanagement, provided that he maintains an equitable interest in the collateral. *See generally* 19 Am. Jur. 2d *Corporations* §§ 2340-41, 2343 at 218-19, 220 (1986); *see, e.g., Federal Deposit Ins. Corp. v. Kerr*, 637 F.Supp. 828, 837 (W.D.N.C. 1986). Moreover, it is clear that the pledgee must hold a beneficial interest in the shares "at the time of the transaction of which he complains . . . ." N.C. Gen. Stat. § 55-55(a) (1982).

In this case, plaintiff's security interest and, therefore, his beneficial interest existed when, on 30 July 1985, defendant Wicker allegedly procured the improper loan. *See id.* But plaintiff's security interest was discharged on 31 July 1985 when defendant Wicker tendered full payment of Mr. Sawyer's debt to plaintiff's attorney. 69 Am. Jur. 2d *Secured Transactions* §§ 530, 538 at 415, 423 (1973); *see also Parker v. Beasley*, 116 N.C. 1, 8, 21 S.E. 955, 959 (1895) (Clark, J., dissenting). Defendant Wicker was entitled to redeem the collateral pursuant to N.C. Gen. Stat. § 25-9-506 even though plaintiff's security interest had first priority. Section 25-9-506 provides that

> the debtor *or any other secured party may unless otherwise agreed in writing after default redeem the collateral* by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

N.C. Gen. Stat. § 25-9-506 (1988). In the first trial, the court ruled that defendant Wicker's tender of $11,626.79 to plaintiff was sufficient to redeem the collateral. Since plaintiff did not appeal from that ruling, plaintiff's beneficial interest in the stock of the defendant corporation was lost some eight months before he filed suit.

We hold that plaintiff had no standing to bring this suit because he failed to maintain his status as a holder of a beneficial interest throughout the pendency of the litigation. We find that such a requirement may be inferred from the language in N.C. Gen. Stat. § 55-55(a) and N.C. Gen. Stat. § 1A-1, Rule 23(b). N.C. Gen. Stat. § 55-55(a) provides that the "action may be brought . . . *by a shareholder or holder* of a beneficial interest in shares of such corporation . . . ." N.C. Gen. Stat. § 55-55(a) (1982) (emphasis added). Rule 23(b) provides that a shareholder derivative suit is "an action brought to enforce a *secondary right* on the part of one or more *shareholders or members* of a corporation . . . ." N.C. Gen. Stat. § 1A-1, Rule 23(b) (1988) (emphasis added); *see, e.g.,* 7C C. Wright and A. Miller, Federal Practice & Procedure § 1826 (1986) (citing *Lewis v. Knutson,* 699 F.2d 230 (5th Cir. 1983) ); *Lewis v. Chiles,* 719 F.2d 1044 (9th Cir. 1983); and *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). The rationale for the rule was described in *Lewis v. Knutson*:

> [F]or plaintiff to satisfy the standing requirements of Rule 23.1, he must demonstrate that he owned stock in the corporation at the time of the transaction of which he complains and *throughout the pendency of the suit, which includes the bringing of the suit and its prosecution. Schilling v. Belcher,* 582 F.2d 995, 999 (5th Cir. 1978). These ownership requirements are necessary because "[s]tanding [to bring a derivative action in behalf of a corporation] is justified only by the proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire *qua* stockholder of the corporation which is the real party in interest." *Id.* at 1002 (quoting *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 735-36 (3rd Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) ). *See also Portnoy v. Kawecki Berylco Industries, Inc.,* 607 F.2d 765, 767 (7th Cir. 1979); *Papilsky v. Berndt,* 466 F.2d 251, 255 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972). Thus, standing under Rule 23.1 concerns the plaintiff's relationship with the real party in interest, the corporation, and not the injury of the corporation.

*Knutson,* 699 F.2d at 238 (emphasis added). Since North Carolina's Rule 23(b) is substantially similar to Federal Rule 23.1 referred to above, we find the court's rationale persuasive. *See generally*

W. Shuford, N.C. Civil Practice and Procedure § 23-1 at 192 (2d ed. 1981).

In this case plaintiff lost his beneficial interest by operation of law months before he filed suit in March 1986, when defendant Wicker properly tendered payment on 31 July 1985, when the trial court upheld defendant's redemption of the collateral, and when plaintiff abandoned his appeal of that judgment. Plaintiff lacked standing to challenge the defendant corporation's loan to defendant Wicker and defendants were entitled to a directed verdict.

Affirmed.

Judges PHILLIPS and PARKER concur.