**BARRETT COMPUTER SERVICES, INC., Plaintiff–Appellant,**

v.

**PDA, INC., Defendant–Appellee.**

No. 89–1181

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1989.

Rehearing Denied Oct. 25, 1989.

Michael R. Cooper, Dallas, Tex., for plaintiff-appellant.

James F. Adams, Jerry C. Alexander, Passman & Jones and Peter S. Vogel, Dallas, Tex., for defendant-appellee.

Before POLITZ, KING and SMITH, Circuit Judges.

KING, Circuit Judge:

The plaintiff-appellant, Barrett Computer Services, Inc. ("BCS"), appeals from the district court's grant of summary judgment to the defendant-appellee, PDA, Inc. ("PDA"). The district court found that BCS failed to demonstrate that a genuine issue of material fact existed as to whether BCS had standing to bring suit against PDA in the instant case. We now reverse the district court's grant of summary judgment to PDA and remand for an evidentiary hearing on BCS' standing to bring suit.

## I. FACTS AND PROCEDURAL BACKGROUND

In April or May 1983, PDA entered into a contract with American Excel Corporation ("American Excel") providing for the design, creation, and implementation of certain computer software programs by PDA for American Excel. At that time, American Excel was a closely held corporation, owned and operated by Gene M. Barrett ("Barrett"). In October 1983, to gain tax advantages related to PDA's programming services, Barrett created BCS. Subsequently, Barrett informed PDA of BCS' formation and made the following two requests: (1) that in the future PDA send all bills for its programming services to BCS and (2) that PDA resubmit all past invoices addressed to American Excel to BCS. PDA substantially complied with both requests. PDA claims, however, that its invoices continued to be paid out of an American Excel account. PDA also continued to

have contact with American Excel employees.

Approximately ten months later, in August 1984, Barrett sold most, or all, of his interest in American Excel to Frontier Insurance Holding Corporation ("Frontier"). The stock purchase agreement controlling this sale specified that, at the closing of the sale of American Excel, Barrett would repurchase certain items from Frontier, including the computer programs written by PDA. In his affidavit opposing PDA's summary judgment motion, Barrett claims that at the time he purchased the programs, he also received all rights related to them—including all causes of action. Barrett's affidavit also states that he subsequently "conveyed" the computer programs to BCS.

On February 3, 1987, BCS filed the complaint in the instant case, in the United States District Court for the Northern District of Texas, asserting diversity as the ground for federal jurisdiction. BCS' complaint alleged the following four causes of action against PDA: (1) breach of contract, (2) Texas Deceptive Trade Practices Act violations, (3) fraud, and (4) common law negligence.

PDA denied BCS' claims and filed a summary judgment motion in relation to BCS' claims against it.[1] PDA based this motion on the grounds that BCS did not have standing to bring the instant suit because it lacked privity to the contract, negotiations, and services upon which its complaints were based. In the alternative, PDA claimed that even if BCS were found to have standing, PDA was entitled to a partial summary judgment because the two year statute of limitations had run on BCS' Deceptive Trade Practices Act, fraud, and negligence claims.

The district court granted PDA's summary judgment motion, holding that even after an opportunity for discovery, BCS did not present adequate evidence to create a genuine issue of material fact about whether it possessed the privity of contract necessary for standing. The district court found that BCS relied on an affidavit by Barrett to establish that the contractual rights, necessary for standing to bring the suit, were assigned to BCS. The district court found Barrett's affidavit inadequate for this purpose, however, because it determined that the affidavit made a "conclusory" assertion that all claims related to the computer programs had been transferred to him at the time he sold American Excel. The district court held that this assertion constituted a "legal conclusion" not clearly supported by other documents presented. In addition, the district court noted the failure of BCS to produce evidence—beyond the "conclusory" statement in Barrett's affidavit—that Barrett had, subsequent to the sale of American Excel, conveyed the computer programs to BCS. Thus, the district court found that BCS lacked the privity of contract requisite to establish standing to bring its suit against PDA. Because the district court found that BCS failed to provide sufficient proof at the summary judgment stage as to its standing to bring any of its claims, the district court did not reach PDA's alternative grounds for partial summary judgment—the statute of limitations issue.

BCS appeals the district court's grant of PDA's motion for summary judgment. It alleges that a genuine issue of material fact exists as to whether BCS has standing to bring suit against PDA in relation to the PDA–American Excel contract.

## II. STANDARD OF REVIEW

On appeal, we assess a district court's decision to grant summary judgment by

---

1. PDA also filed counterclaims against BCS. In its counterclaims, PDA alleged that BCS' pleadings in relation to PDA's alleged violations of the Texas Deceptive Trade Practices Act were made in bad faith and that BCS made excessive demands on PDA. In relation to both of these claims, PDA requested attorneys' fees. In addition, PDA claimed that BCS tortiously interfered with the contractual relationship between PDA

and its then employee Don Densmore. PDA asserted that BCS—knowing that it would violate Densmore's employment contract with PDA—lured Densmore into "moonlighting." As a consequence, PDA claimed that it lost revenue and, ultimately, Densmore as an employee. At the request of PDA and BCS, on January 27, 1989, the district court dismissed PDA's counterclaims without prejudice.

reviewing the record under the same standards as the district court. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Therefore, we will not affirm a summary judgment ruling unless "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Brooks*, 832 F.2d at 1364 (quoting Fed.R.Civ.P. 56(c)). Following this standard, we must consider fact questions with deference to the nonmovant. As a consequence, when a fact question controls the disposition of a summary judgment motion, we must "review the evidence and any inferences to be drawn therefrom in the light most favorable to the non-moving party." *Baton Rouge Bldg. Constr. v. Jacobs Constructors*, 804 F.2d 879, 881 (5th Cir. 1986) (per curiam); *see also Reid*, 784 F.2d at 578. Questions of law, in contrast, we will decide in the same manner as we decide questions of law outside the summary judgment context—by de novo review. *Brooks*, 832 F.2d at 1364.

## III. DISCUSSION

We now turn to the specifics of the instant case. As we noted above, after considering the evidence before it, the district court found that BCS failed to provide evidence sufficient to create a genuine issue of material fact about whether BCS had standing to bring claims relating to the PDA–American Excel contract regarding the design, creation, and implementation of certain computer programs. BCS appeals the district court's finding against it, arguing that the evidence presented against summary judgment in the affidavit of Barrett and deposition testimony of PDA demonstrate the existence of fact issues as to the following: (1) whether BCS had been assigned the rights to causes of action arising from the PDA–American Excel contract and (2) whether BCS was a donee beneficiary of the PDA–American Excel contract with the right to bring such suit. We consider these claims in turn.

A. BCS' Claim to Standing Based on an Assignment of Rights in Relation to the PDA–American Excel Contract.

At the summary judgment proceedings, BCS claimed standing to bring the causes of action alleged in its original complaint by virtue of having been conveyed the computer programs resulting from the PDA–American Excel contract. In deciding whether or not BCS succeeded in establishing that a fact issue exists in relation to its standing to bring the claims, BCS' evidence of assignment of claims must be considered in relation to the well-established standards for summary judgment.

Though the purpose of this inquiry is solely to determine whether a genuine fact issue exists, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Thus, in a civil case—like the one at hand—although PDA does not need to support its summary judgment motion with evidence "negating" BCS' claims to succeed, an assessment must be made as to whether BCS has made a "sufficient showing" on each "essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The establishment of standing—whether a "litigant is entitled to have the court decide the merits of the dispute or of a particular issue," *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)—is, by and large, a "preliminary matter." *Lewis v. Knutson*, 699 F.2d 230, 237 (5th Cir. 1983). Therefore, BCS needs to have demonstrated that a "'case or controversy' between [itself] and the defendant within the meaning of Art. III" of the Constitution exists. *Warth*, 422 U.S. at 498, 95 S.Ct. at 2204. To have accomplished this, BCS must have shown that it suffered an actual injury as a result of PDA's actions and that such injury is redressable by judicial decree. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*

§ 3531 (2d ed. 1984). In a suit based upon contractual theory [2] this means that privity of contract must have been shown. *Republic Nat'l Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76 (Tex.Civ.App. —Dallas 1968, writ n.r.e.).[3]

■ BCS claims that a fact issue exists as to whether such privity arose through an assignment to BCS of all rights related to the programs. To support its claim, BCS presented evidence showing that American Excel was aware of the existence of BCS and also submitted an affidavit by Barrett. In his affidavit, Barrett stated:

> In August, [sic] 1984, I, as sole shareholder of American Excel Corp., sold all of the outstanding stock of American Excel Corp. to Frontier Insurance Holding Corporation. In connection with such sale I was conveyed the rights to all the programs developed by PDA, Inc. which included any causes of action related thereto or arising therefrom. I subsequently conveyed the programs to Barrett Computer Services, Inc.

From Barrett's affidavit, it is clear that he claims to have been conveyed all the rights associated with the computer programs, as well as the programs themselves, at the sale of American Excel. In addition, although the affidavit includes a somewhat ambiguous reference, it appears that Barrett uses the term "computer programs" broadly to include not only the programs, but all the rights associated with them as well. "Review[ing] the facts drawing all inferences most favorable to the party opposing the motion[ ]," *Reid*, 784 F.2d at 578, we construe conveyance of the computer programs to include conveyance of all the rights associated with the programs as well.

In its holding, the district court discredited Barrett's affidavit as evidence of BCS' right to bring suit against PDA because it found Barrett's comments on the alleged conveyances "conclusory" and his statements about the transfer of the programs from American Excel to himself to reach a "legal conclusion." While it is true that affidavits "setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment," *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 2738 (2d ed. 1983)), the affidavit in the instant case does not fall within these categories.

In connection with the transfer of the computer programs from American Excel to Barrett, the stock purchase agreement relating to the sale of American Excel confirms that Barrett bought the programs back from Frontier and shows that Barrett and Frontier reached an agreement whereby Barrett would allow American Excel to continue to use the computer programs in question. Hence, though the stock purchase agreement makes no specific reference to the assignment of any causes of action relating to the programs, it does demonstrate that Barrett received some rights in relation to the programs. In opposition, PDA offered the deposition testimony of an American Excel employee, asserting that American Excel had not assigned any possible claims to Barrett or BCS. However, as BCS is the nonmovant in this summary judgment proceeding, its evidence must be viewed drawing all reasonable factual inferences in its favor. *See Reid*, 784 F.2d at 578; *Baton Rouge Bldg. & Constr.*, 804 F.2d at 881. Thus, construing the facts from both the affidavit and the stock purchase plan in the light most favorable to BCS, we must assume—for the purposes of summary judgment—that such an assignment did occur.

---

**2.** In one claim, BCS alleged breach of contract by PDA. Its other claims—Texas Deceptive Trade Practices Act violations, fraud, and negligence—are based upon alleged representations by PDA leading up to and in relation to the alleged contract.

**3.** While Rule 56 of the Federal Rules of Civil Procedure determines the outcome of the summary judgment motion made in this case, Texas substantive law governs this suit—which is in the federal court system by virtue of diversity jurisdiction. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In relation to the next step in establishing standing for BCS—the transfer of the causes of action from Barrett to BCS—BCS offers only Barrett's affidavit as evidence of the assignment. As quoted, *supra*, his affidavit states that he conveyed the computer programs to BCS. While this is not detailed information, BCS' offer of Barrett's affidavit meets all of the requirements set by Fed.R.Civ.P. 56(e) for affidavits opposing summary judgment motions. That is, Barrett has personal knowledge of the alleged transaction, offers facts that would be admissible in evidence, and is competent to offer evidence on the alleged assignment of rights relating to the computer software. Moreover, because of Barrett's instrumental positions on both sides of the alleged transaction, as both the conveyor of the computer programs and the president and owner of the corporation receiving the programs, Barrett is in a position to know whether the computer programs were actually transferred. Again, giving BCS, as nonmovant, the benefit of all reasonable factual inferences, we must assume—for the purposes of summary judgment—that the alleged conveyance of the computer programs from Barrett to BCS took place.

Based on all of the above, we find that BCS succeeded in putting forth evidence supporting its claim of privity—and, thereby, standing—in relation to the PDA–American Excel contract. As BCS is only required, at the summary judgment stage, to bring forth sufficient evidence of the essential elements on which it bears the burden of proof, we find that the district court erred in granting summary judgment to PDA and dismissing BCS' claims on the merits. Although more concrete evidence of the conveyances of the computer programs would have been preferable, the evidence presented suffices to establish the existence of a genuine fact issue regarding BCS' standing to bring the claims alleged in its original complaint. After all, in summary judgment proceedings, "[t]he judge's function is not himself to weigh the evidence and determine the truth of the matter...." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citation omitted). Rather, he or she only assesses whether there is a "genuine issue as to any material fact...." Fed.R.Civ.P. 56(c).

Reaching this conclusion would normally end our consideration of the case. However, because this case came to us as an appeal from a summary judgment based on the preliminary issue of standing, we write to clarify the impact of our findings and our reasons for remanding to the district court for an evidentiary hearing. We wish to stress that our reversal of the district court does not indicate that we find BCS to have standing or a right to a trial on the merits of the claims—as is usually the case where a summary judgment motion is denied. *See, e.g., Switzerland Ass'n v. Horne's Market*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (denial of summary judgment motion is a "pretrial order that decides only one thing—that the case should go to trial"). Rather, our holding simply indicates that BCS has succeeded in demonstrating that an issue of fact exists as to whether BCS meets the requirements for standing to bring a case in federal court.

 By definition, standing goes to "the 'case or controversy' limitation on federal court jurisdiction, and [an inquiry into a party's standing] focuses primarily 'on the party seeking to get his complaint before a federal court.'" *Hill v. City of Houston*, 764 F.2d 1156, 1159 (5th Cir.1985) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)), *adhered to on other grounds*, 789 F.2d 1103 (5th Cir.1986), *aff'd* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). As such, standing concerns the right of a party to bring a particular suit and is "a separate inquiry from whether the party should prevail," *id.*, and, generally, even from whether any issues of fact relating to the merits exist. *Cf. McNair v. United States Postal Serv.*, 768 F.2d 730, 737 (5th Cir.1985) (per curiam) (appellate court vacated and remanded district court's grant of summary judgment stating that the pleadings proved that the *dismissal* should have been granted on the basis of a lack of standing—"a determi-

nation that robs the court of jurisdiction to hear the case").

Challenges to standing are disposed of in a number of ways, and it is difficult to extract a rule from the cases that clearly identifies the proper method for resolving a particular standing problem. Some are disposed of on the pleadings. *See, e.g., McNair, supra.* Alternatively, in cases in which the merits of the claims asserted are intertwined with the jurisdictional issue of standing, challenges to standing are frequently resolved in summary judgment proceedings—where the nonmovant is granted all reasonable factual inferences and the movant cannot succeed unless the court finds that no genuine issue of material fact exists—or at a trial on the merits. In such cases, to compel a preliminary factual inquiry into the plaintiff's standing would force the party bringing the suit to prove merit issues in order to establish jurisdiction.

The Supreme Court's opinions in *Gwaltney of Smithfield v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), and *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), amplify the use of summary judgment proceedings to resolve standing problems in cases where the merits and standing issues are intertwined. In *Gwaltney,* environmental groups brought a suit under the citizen's suit provision of the Clean Water Act (§ 505), alleging that Gwaltney of Smithfield ("Gwaltney") "has violated … [and] will continue to violate its NPDES [National Pollutant Discharge Elimination System] permit." *Gwaltney,* 108 S.Ct. at 380. The plaintiffs also relied on allegations of Gwaltney's violation of its

NPDES permit to show injury and, therefore, standing. Gwaltney moved for dismissal of the suit for lack of subject matter jurisdiction, arguing that the citizen's suit provision required complaints to allege current violations of the Act. *Id.* Gwaltney also argued that the plaintiffs had to prove their allegations of "ongoing noncompliance" before jurisdiction attached. *Id.* at 385. While the Supreme Court agreed "that § 505 does not permit citizen suits for wholly past violations …," it found that jurisdiction existed "over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation[ ]" of the permit. *Id.* at 384–85. Consequently, the Court remanded for consideration of whether respondents' allegations in the complaint were made in good faith. *Id.* at 386.

Relying on its earlier opinion in *SCRAP,*[4] however, the Court went on to comment on the appropriate way in which to challenge allegations going to the jurisdictional issue of standing in such cases. The Court stated:

> In *United States v. SCRAP,* we noted that if the plaintiffs' 'allegations [of standing] were in fact untrue, then the [defendants] should have moved for summary judgment on the standing issue and demonstrated to the District Court that the allegations were sham and raised no genuine issue of fact.' If the defendant fails to make such a showing after the plaintiff offers evidence to support the allegations the case proceeds to trial on the merits, where the plaintiff must prove the allegations in order to prevail. But the Constitution does not require that the plaintiff offer this proof as a

---

**4.** *SCRAP* presented a situation similar to *Gwaltney.* In *SCRAP,* the plaintiffs, various citizens' groups, sought an injunction to restrain enforcement of certain orders by the Interstate Commerce Commission ("ICC") concerning a proposed 2.5% surcharge on freight rates. The plaintiffs argued that the ICC's orders were unlawful because they failed to include an environmental impact statement assessing the alleged effects of the proposed surcharge. Plaintiff SCRAP based standing on allegations that "a general rate increase would … cause increased use of nonrecyclable commodities as compared to recyclable goods, thus resulting in the need to use more natural resources to produce such goods, some of which resources might be taken from the [plaintiffs' area of residence], and resulting in more refuse that might be discarded in national parks in the [plaintiffs' residence] area." *SCRAP,* 412 U.S. at 688, 93 S.Ct. at 2416. The defendants filed a motion to dismiss "for failure to allege sufficient standing." *Id.* at 690, 93 S.Ct. at 2417. The Court found that the district court's denial of such motion was correct. *Id.* As in *Gwaltney,* the allegations made by the plaintiffs to demonstrate standing also constituted key determinations in a consideration of the merits.

threshold matter in order to invoke the District Court's jurisdiction.

*Id.* at 385–86. In *Gwaltney* and *SCRAP,* because it would be impossible to prove the injuries alleged for the purposes of establishing standing without also addressing the merits, a preliminary hearing of the type available in disposing of a motion to dismiss would not offer an appropriate forum for evaluating the issues. In fact, this type of intertwining of the merits and the jurisdictional issues has led some commentators to "conclude that there is little to be gained by preliminary factual inquiry into some issues of standing." 13A Wright, Miller & Cooper, *supra,* § 3531.15, at 100 (citing *SCRAP*).

By contrast, in a case in which considerations of standing can be severed from a resolution of the merits, a preliminary hearing—to resolve disputed factual issues determining standing—is an appropriate course. Such a hearing could result from a motion to dismiss for lack of subject matter jurisdiction. *Cf. Lewis v. Knutson,* 699 F.2d at 236;[5] *see also* Fed.R.Civ.P. 12(b)(1). The issue of standing may also be raised upon the court's own motion. Fed.R.Civ.P. 12(h)(3);[6] *see also* 13A Wright, Miller & Cooper, *supra,* § 3531.15. In either case, because standing issues present jurisdictional questions, an inquiry into the existence of a party's standing usually should be governed by the standards controlling explorations into a court's subject matter jurisdiction. *See, e.g., Lewis, supra.* In this circuit, it is well settled that subject matter jurisdiction determinations, unlike summary judgment decisions, may be made using any one of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supple-

mented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.); *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *see also Giannakos v. M/V Bravo Trader,* 762 F.2d 1295, 1298 (5th Cir.1985) (identical standards applied to assess subject matter jurisdiction issues, even outside of the context of a Fed.R.Civ.P. 12(b)(1) motion to dismiss). Thus, in a preliminary hearing on a jurisdictional issue, the district court is given greater latitude and discretion than in a summary judgment proceeding where the district court must give deference on fact questions to the nonmovant.

In the case at hand, the issue of BCS' right to bring suit—whether it is a party to the PDA–American Excel contract—is severable from consideration of the merits of BCS' allegations against PDA. Because of the ease with which the two issues can be separated and because of the breadth generally allowed to courts in exploring issues that go to their own jurisdiction, we believe that the issue of BCS' standing would be most effectively and appropriately resolved in an evidentiary hearing. Furthermore, holding such a hearing—rather than calendaring the case for trial on the basis of BCS having brought forward some disputed evidence on the preliminary issue of standing—is in the interest of conserving judicial resources. Thus, we remand to the district court for a hearing to consider BCS' standing, in accordance with this circuit's dictates on inquiries relating to subject matter jurisdiction.

**B. BCS' Claim to Standing as a Donee Beneficiary to the PDA–American Excel Contract.**

BCS failed to raise the issue of whether it qualified as a donee beneficiary to the

---

**5.** *Lewis* is particularly helpful on this subject. In *Lewis,* the district court "converted" a motion to dismiss for lack of standing into a summary judgment motion on the same grounds. *Lewis,* 699 F.2d at 236. After noting that standing issues relate to a court's jurisdiction to hear a case, the appellate court held that "if the jurisdictional challenge does not implicate the merits of the cause of action, the jurisdictional basis must survive both facial and factual attacks before the district court can address the merits of the claim." *Id.* at 237. Thus, the appellate

court "relabeled" and reviewed the district court's grant of summary judgment as a Fed.R. Civ.P. 12(b) motion to dismiss. *Id.,* at 238 and n. 10.

**6.** Fed.R.Civ.P. 12(h)(3) reads as follows: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

PDA–American Excel contract in the district court. Therefore, we are constrained from addressing this issue on appeal.

## IV. ORDER

For the foregoing reasons, we REVERSE the judgment of the district court granting summary judgment to the defendant-appellee PDA and dismissing the plaintiff-appellant BCS' claims against PDA on the merits. We REMAND to the district court and instruct it to hold an evidentiary hearing on the issue of BCS' standing.

REVERSED and REMANDED.