United States Court of Appeals,

Eleventh Circuit.

No. 96-9116.

Jim WILSON, individually and on behalf of all persons similarly situated, Robert K. Finnell, Kenneth C. Fuller, Kenneth J. Rajotte, individually and on behalf of all persons similarly situated, Plaintiffs-Appellants,

v.

STATE BAR OF GEORGIA, Defendant-Appellee,

Forrest L. CHAMPION, JR., Amicus.

Jan. 16, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 4:95-CV-321-HLM), Harold L. Murphy, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and PROPST[*], Senior District Judge.

HATCHETT, Chief Judge:

Appellants brought this lawsuit pursuant to 42 U.S.C. § 1983 claiming that two of the Rules and Regulations for the Organization and Government of the State Bar of Georgia, Standard 73 to Rule 4-102(d) and Rule 4-219(c)(2), constitute impermissible bills of attainder, abridge their First Amendment rights, and are void for vagueness under the Due Process Clause of the Fourteenth Amendment. The district court granted summary judgment for appellee State Bar of Georgia ("the State Bar"), and appellants now challenge the court's rulings as to their First and Fourteenth Amendment claims. We affirm.

## I. BACKGROUND

The Rules and Regulations for the Organization and Government of the State Bar of Georgia

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

govern the conduct of lawyers in that state. The Georgia Supreme Court adopts and amends the rules and regulations upon recommendation of the State Bar, and the State Bar enforces them. *See, e.g.,* O.C.G.A. §§ 15-19-30-31, 33-34 (1994); Rules & Regulations for the Org. & Gov't of the State Bar of Ga. ("State Bar Rules & Regulations"), Rule 4-101 (1996). On September 14, 1995, the Georgia Supreme Court, acting in response to a motion the State Bar filed in 1992, adopted two related amendments to the rules and regulations. These amendments went into effect on October 15, 1995. The first, Standard 73 to Rule 4-102(d), provides:

> A lawyer shall not allow any person who has been suspended or disbarred under Part IV of these Rules and who maintains a presence in an office where the practice of law is conducted by the lawyer, to:
>
> (a) represent himself or herself as a lawyer or person with similar status;
>
> (b) *have any contact with the clients of the lawyer either in person, by telephone, or in writing; or*
>
> (c) *have any contact with persons who have legal dealings with the office either in person, by telephone, or in writing.*
>
> A violation of this Standard may be punished by disbarment.

State Bar Rules & Regulations, Rule 4-102(d), Standard 73 (emphasis added to language under challenge). The second, Rule 4-219(c)(2), states in relevant part:

> (c)(2) After a final judgment of disbarment or suspension under Part IV of these Rules, ... the respondent [the suspended or disbarred lawyer] shall take such action necessary to cause the removal of any indicia of the respondent as a lawyer, legal assistant, legal clerk or person with similar status. *In the event the respondent should maintain a presence in an office where the practice of law is conducted, the respondent shall not:*
>
> (i) *have any contact with the clients of the office either in person, by telephone, or in writing; or*
>
> (ii) *have any contact with persons who have legal dealings with the office either in person, by telephone, or in writing.*

State Bar Rules & Regulations, Rule 4-219(c)(2) (emphasis added to language under challenge).

In its brief submitted in August 1992 in support of the adoption of these amendments, the State Bar represented to the Georgia Supreme Court that "[t]he continued practice of law by disbarred lawyers in this State aided by members of the Bar is an all too frequent occur[re]nce." The State Bar contended that such illicit activity was difficult to regulate and prosecute. Thus, according to the State Bar,

> strict prohibition from client contact is absolutely essential to prevent a former lawyer from crossing the line from permissible paralegal activities to giving legal advice, taking fees and misleading the client. Not only does the client suffer under this scenario but the disciplinary system loses credibility because of its inability to effectively protect the public from unethical attorneys even after their disbarment.

The State Bar asserted that several jurisdictions had more stringent restrictions concerning the activities of suspended or disbarred lawyers. It also stated that the amendments

> do not prevent the disbarred lawyer from performing such law-related tasks as legal research and drafting. The [amendments] do not restrict the disciplined lawyer from other types of employment. They are narrowly drawn to insulate the person who has been disbarred from contact with the public *with respect to legal matters.*

(Emphasis added.)

Appellants fall into two classes: (1) "all suspended or disbarred attorneys who are currently employed by lawyers practicing in the State of Georgia" (hereinafter "disbarred attorneys"); and (2) "all practicing attorneys who currently employ or wish to employ the services of suspended or disbarred attorneys in their law offices in the State of Georgia" (hereinafter "employing attorneys"). On October 12, 1995, in an attempt to enjoin the State Bar from enforcing the amendments, appellants filed a motion for a temporary restraining order and preliminary injunction.[1] The primary argument appellants asserted in support of their motion was that the amendments constituted

---

[1]Around this time, Kenneth Rajotte, Jim Wilson and Dunham McAllister also filed a motion requesting the Georgia Supreme Court to reconsider its adoption of the amendments. The court denied the motion on October 31, 1995. Rajotte and Wilson are two of the appellants in the present action.

improper bills of attainder. Appellants also argued that the amendments, as written, chilled protected expression and were unduly vague. After conducting a hearing the following day, the district court denied the motion, concluding that appellants had failed to demonstrate irreparable harm. The court, however, expressed "a possible concern as to the broadness of certain language" in the amendments.

On November 20, 1995, the State Bar filed a motion for reconsideration and clarification in the Georgia Supreme Court, requesting the addition of proposed clarifying language to the amendments. It appears that the district court's comments at the October 13 hearing, as well as the fact that the State Bar had "received some telephone inquiries from bar members regarding activities which may be prohibited by these new rules," precipitated the State Bar's motion. The State Bar proposed that Standard 73 be revised as follows:

> A lawyer shall not allow any person who has been suspended or disbarred under Part IV of these Rules and who maintains a presence in an office where the practice of law is conducted by the lawyer, to *engage in the following conduct:*
>
> (a) represent himself or herself as a lawyer or person with similar status;
>
> (b) have any contact with the clients of the lawyer either in person, by telephone, or in writing; or
>
> (c) have any contact with persons, *including but not limited to opposing parties, lawyers, witnesses, and insurance personnel,* who have legal dealings with the office either in person, by telephone, or in writing.
>
> *This Standard shall not be construed in such a manner as to require the lawyer to prohibit the disbarred or suspended lawyer from:*
>
> *(1) engaging in social conversation unrelated to the representation or legal dealings of the lawyer's office; or*
>
> *(2) gathering general information in the course of working in the lawyer's office which would involve limited contact with suppliers of information such as law librarians, the Secretary of State, and clerks' offices.*
>
> A violation of this Standard may be punished by disbarment.

The State Bar proposed like changes to Rule 4-219(c)(2):

> (c)(2) After a final judgment of disbarment or suspension under Part IV of these Rules, ... the respondent shall take such action necessary to cause the removal of any indicia of the respondent as a lawyer, legal assistant, legal clerk or person with similar status. In the event the respondent should maintain a presence in an office where the practice of law is conducted, the respondent shall not:
>
> (i) have any contact with the clients of the office either in person, by telephone, or in writing; or
>
> (ii) have any contact with persons, *including but not limited to opposing parties, lawyers, witnesses, and insurance personnel,* who have legal dealings with the office either in person, by telephone, or in writing.
>
> *This Rule shall not be construed in such a manner as to prohibit the disbarred lawyer from:*
>
> *(i) engaging in social conversation unrelated to the representation of clients or legal dealings of the law office; or*
>
> *(ii) gathering general information in the course of working in a law office which would involve limited contact with suppliers of information such as law librarians, the Secretary of State, and clerks' offices.*

The State Bar asserted in its motion that "[t]his proposal does not represent a change in the substance of the rules as approved by this Court.... It is offered as an attempt to clarify the rules and as an aid to bar members who may wish to employ disbarred or suspended lawyers in a limited capacity." The Georgia Supreme Court summarily denied the motion.

On January 8, 1996, the Georgia Supreme Court addressed Standard 73 in *In re Thomson,* 266 Ga. 157, 464 S.E.2d 818 (1996) (per curiam). The court framed the issue before it as follows: "The issue in this disciplinary case is whether during his suspension, Thomson should be subject to Standard 73, which prohibits a lawyer from allowing a suspended or disbarred attorney in his employ to have *substantial client contact.*" 464 S.E.2d at 819 (emphasis added). In refusing to grant Thomson an exemption from Standard 73, the court wrote:

> Thomson requests that he be exempted from Standard 73. He states that he works in a high volume consumer bankruptcy practice under the supervision of other lawyers; he

screens new business calls and trains and monitors younger lawyers and paralegals; and Standard 73 will prevent him from performing any of the duties because they all involve client contact....

If Thomson is granted an exception, this will effectively eviscerate Standard 73. *Thomson's proposed professional activities—initial phone contact with potential clients and supervising young lawyers' client contacts—are inappropriate for a lawyer under suspension for any violation because of the difficulty in preventing the unauthorized practice of law in that setting by the suspended lawyer.* Although Thomson claims he will be unemployable in the bankruptcy area during his suspension, we do not read Standard 73 so broadly. *Thomson may still conduct legal research and draft memoranda or correspondence for the lawyers in the firm.*

464 S.E.2d at 819 (emphasis added).

Appellants' claims in the district court were broken out as follows. First, the disbarred attorneys argued that the amendments chilled their protected speech in violation of the First Amendment. Next, both classes of appellants asserted that the amendments were void for vagueness and constituted punitive bills of attainder. The parties moved for summary judgment, and on August 21, 1996, the district court granted the State Bar's motion.[2] The court first held that the disbarred attorneys "lack standing [under the First Amendment] because it is unreasonable for them to believe that [in order to avoid disciplinary sanction] they must forego the, primarily hypothetical, protected speech raised by their pleadings." (Footnote omitted.) Second, the court rejected appellants' void for vagueness argument, holding that (1) "attorneys of reasonable intelligence, both practicing and disbarred, can derive a core meaning from the [amendments]," and (2) "Plaintiffs can clarify their uncertainty about the [amendments] by posing questions to the State Bar ... and by reading the State Bar's Motion For Reconsideration and Clarification." Finally, the court disposed of appellants' bill of attainder challenge on several grounds. On appeal, appellants challenge only the district court's holdings as to their First and Fourteenth Amendment claims.

---

[2]The court had previously denied Forrest Champion, Jr.'s motion for leave to file an amicus brief.

## II. ISSUES

This appeal presents two issues: (1) whether the district court erred in holding that appellants lack standing to mount a pre-enforcement First Amendment challenge to Standard 73 and Rule 4-219(c)(2); and (2) whether the district court erred in holding that these provisions are not void for vagueness.

## III. STANDARDS OF REVIEW

Whether appellants have standing to bring suit constitutes a legal issue subject to *de novo* review. *Jacobs v. The Florida Bar,* 50 F.3d 901, 903 (11th Cir.1995). "When the attack on standing occurs via a motion for summary judgment, the plaintiffs can no longer rest on their allegations, but must set forth by affidavit or other evidence specific facts which for the purpose of summary judgment will be taken as true." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 806 (11th Cir.1993) (internal quotation marks omitted), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994). In this context, we evaluate standing "from all materials of record." *E.F. Hutton & Co. v. Hadley,* 901 F.2d 979, 983 (11th Cir.1990) (internal quotation marks omitted).

"Whether a statute, regulation, or local ordinance is unconstitutionally vague is a question of law that we review de novo." *Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm'rs,* 32 F.3d 1436, 1443 (10th Cir.1994); *see also San Filippo v. Bongiovanni,* 961 F.2d 1125, 1133 (3d Cir.) ("The district court's application of the void for vagueness doctrine ... is purely an issue of law subject to our plenary review."), *cert. denied,* 506 U.S. 908, 113 S.Ct. 305, 121 L.Ed.2d 228 (1992).

## IV. DISCUSSION

### A.

"Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 802, 127 L.Ed.2d 99 (1994). The constitutional core of standing contains three elements. The party invoking federal court authority must show that (1) he or she has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) the injury can fairly be traced to that conduct; and (3) a favorable decision is likely to redress the injury. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). Whether the disbarred attorneys possess standing to sue in this case hinges on the first element, that is, the existence of an actual or threatened injury. This inquiry is necessarily case-specific. *New Hampshire Right to Life Political Action Comm. v. Gardner,* 99 F.3d 8, 13 (1st Cir.1996).

The disbarred attorneys contend that the provisions at issue chill their protected speech because they bar "*all* speech or "contacts' with *all* members of the designated groups, under *any* circumstances, at *any* time, at *any* place, and for *any* reason." So, for example, the disbarred attorneys claim they face sanction if they associate socially with family members or close friends who also happen to be clients of their employers. Likewise, they argue that the amendments "prohibit a disbarred lawyer/employee from speaking on any subject with his doctor, his barber, his auto mechanic, anyone and everyone who is a client of the law firm employer or who has legal dealings with the employer."[3] Appellants imply through affidavit evidence that one unnamed disbarred attorney has forgone constitutionally protected speech due to the existence of the

---

[3]The record reveals that a disbarred attorney faces two possible forms of disciplinary action from the State Bar for violating the amendments. First, the State Bar can refer the disbarred attorney to a state solicitor for prosecution. Second, it can place a disciplinary report in the disbarred attorney's reinstatement file, presumably reducing the disbarred attorney's chances of again becoming eligible to practice law.

amendments. The employer of that disbarred attorney averred: "I am presently working on the campaign of a judge. Although the disbarred attorney who works for me personally knows the judge, and would like to be involved in the political campaign in support of the judge ..., he is reluctant to do so for fear that he might inadvertently fall afoul of the prohibitions on "contact' contained in the [amended] bar rules."

In the First-Amendment realm, plaintiffs do not have to expose themselves to enforcement in order to challenge a law. *Jacobs,* 50 F.3d at 904. Rather, "an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *New Hampshire Right to Life,* 99 F.3d at 13. In such an instance, which is what is alleged here, the injury is self-censorship. *See ACLU v. The Florida Bar,* 999 F.2d 1486, 1492 (11th Cir.1993). When a plaintiff brings a pre-enforcement challenge to a sanctioning statute, regulation or ordinance, standing exists at the summary judgment stage when the plaintiff has submitted evidence indicating "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and *there exists a credible threat of prosecution.*" *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (emphasis added); *see also Graham v. Butterworth,* 5 F.3d 496, 499 (11th Cir.1993); *ACLU,* 999 F.2d at 1492 ("Under *Babbitt,* a plaintiff must allege that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution."). "[I]f no credible threat of prosecution looms, the chill is insufficient to sustain the burden that Article III imposes. A party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." *New Hampshire Right to Life,* 99 F.3d at 14; *see also ACLU,* 999 F.2d at 1492 & n. 13. While we agree with the First Circuit's admonition that the credible threat of

prosecution standard "is quite forgiving," *New Hampshire Right to Life,* 99 F.3d at 14, we hold that the disbarred attorneys have failed to meet it in this case.

The disbarred attorneys practically concede this issue in their brief to this court, acknowledging that "there was no evidence regarding specific threats or actions as of the date of the District Court's Order whereby the State Bar had attempted to enforce the Amended Rules against a disbarred attorney for engaging in protected speech." (Emphasis omitted.)  Moreover, the record indicates that the State Bar has repeatedly and consistently taken the position that the amendments have no application to the types of scenarios the disbarred attorneys have posed.  "Because [the disbarred attorneys'] alleged injury is one of self-censorship, the likelihood of disciplinary action by the Bar ... is an important factor in determining whether [they] reasonably believed that [they] had to forego what [they] considered to be constitutionally protected speech in order to avoid disciplinary charges being brought against [them]."  *ACLU,* 999 F.2d at 1492.

The State Bar's motion in support of the amendments made clear that the provisions were "drawn to insulate the person who has been disbarred from contact with the public *with respect to legal matters.*"  In addition, the State Bar's motion for reconsideration and clarification stated that Standard 73 applied to professional "conduct."   As to both amendments, the motion for reconsideration further defined "persons" as "including but not limited to opposing parties, lawyers, witnesses, and insurance personnel."  It also asserted that Rule 4-219(c)(2) did not apply to "social conversation unrelated to the representation of clients or legal dealings of the law office," or to the "gathering [of] general information in the course of working in a law office."[4]  Furthermore, the

[4]Appellants argue that they can take no comfort in the motion for reconsideration because the Georgia Supreme Court denied it.  We find this contention meritless.  It is the State Bar, after all, that is the defendant in this case.  And, the State Bar expressed the view in its motion that its proposed revisions did "not represent a change in the substance of the rules as approved by th[e] Court."  Indeed, this may be the very reason the Georgia Supreme Court denied the motion—at

State Bar has informed disbarred attorneys, upon request, about whether it will sanction them for engaging in certain practices. The record supports the district court's finding that the State Bar "has assisted concerned attorneys with questions regarding" the contours of the amendments. Finally, in its pleadings in the district court and in its submission to this court, the State Bar has consistently maintained that it will not sanction disbarred attorneys for engaging in political, religious or social speech.

In sum, the disbarred attorneys' asserted belief that they have to forego the constitutionally protected speech they pose in order to avoid sanctions under the amendments is not objectively reasonable. Accordingly, they have failed to show injury, and thus they lack standing to bring this anticipatory challenge.

B.

"Vagueness arises when a statute is so unclear as to what conduct is applicable that persons "of common intelligence must necessarily guess at its meaning and differ as to its application.' " *United States v. Gilbert,* 130 F.3d 1458, 1462 (11th Cir.1997) (quoting *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). When addressing a facial challenge to a law on vagueness grounds, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1190, 71 L.Ed.2d 362 (1982). In making this determination, we must consider the *In re Thomson* court's statements concerning Standard 73. *See Village of Hoffman Estates,* 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5 (when evaluating the purported vagueness of a state law or regulation, "a federal court must, of course, consider any limiting construction that a state court ... has proffered"). As discussed, the Georgia

least, the *In re Thomson* decision would so indicate.

Supreme Court stated that Standard 73 "prohibits a lawyer from allowing a suspended or disbarred attorney in his employ to have *substantial client contact.*" *In re Thomson,* 464 S.E.2d at 819 (emphasis added). The court also rejected Thomson's "proposed professional activities"—making initial telephone contact with potential clients and supervising young lawyers' client contacts—because they implicated "the difficulty in preventing the unauthorized practice of law in [a law office] by the suspended lawyer." *In re Thomson,* 464 S.E.2d at 819. We have little difficulty agreeing with the district court's conclusion that the amendments govern occupational conduct, and not a substantial amount of protected speech. "Any abridgement of the right to free speech is merely the incidental effect of observing an otherwise legitimate [occupational] regulation." *Lawline v. American Bar Ass'n,* 956 F.2d 1378, 1386 (7th Cir.1992).

"A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications." *Woodruff v. United States Dep't of Labor,* 954 F.2d 634, 643 (11th Cir.1992) (per curiam). We are mindful that "[t]he particular context in which a regulation is promulgated ... is all important." *Howell v. State Bar of Tex.,* 843 F.2d 205, 208 (5th Cir.), *cert. denied,* 488 U.S. 982, 109 S.Ct. 531, 102 L.Ed.2d 563 (1988). Consequently, if lawyers or former lawyers of reasonable intelligence can derive a core meaning from the amendments, then the amendments "may validly be applied to conduct within that meaning and the possibility of a valid application necessarily precludes facial invalidity." *High Ol' Times v. Busbee,* 673 F.2d 1225, 1228 (11th Cir.1982); *see also Woodruff,* 954 F.2d at 643 ("The test is whether the enactment is substantially incomprehensible.").

In rejecting appellants' vagueness claim, the district court pointed out that the amendments would obviously preclude a disbarred attorney who reports to work at a practicing lawyer's office on a regular basis from (1) arguing a legal matter before a judge, or (2) negotiating a settlement

agreement with opposing counsel. The district court also noted that disbarred or employing attorneys in need of guidance concerning the amendments can present questions to the State Bar and study the motion for reconsideration and clarification. *See* State Bar Rules & Regulations, Rules 4-401 (Informal Advisory Opinions), 4-403 (Formal Advisory Opinions). We agree with the district court's analysis and need go no further, as we are confident that appellants can derive a core meaning from the amendments.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.