Cheryl BISCHOFF, Vicky Stites, Plaintiffs-Appellants,

v.

OSCEOLA COUNTY, FLORIDA, a Political Subdivision of the State of Florida, Charles Croft, Sheriff, in his official capacity, Defendants-Appellees.

No. 99-2354.

United States Court of Appeals,

Eleventh Circuit.

Aug. 14, 2000.

Appeal from the United States District Court for the Middle District of Florida.(No. 98-00583-CV-ORL-18C), G. Kendall Sharp, Judge.

Before EDMONDSON and MARCUS, Circuit Judges, and HANCOCK[*], District Judge.

MARCUS, Circuit Judge:

In this appeal, we address whether a federal district court, having raised *sua sponte* a question about the Plaintiffs' standing, may dismiss a complaint determining that the Plaintiffs lack standing simply by making a credibility determination based on the contents of squarely conflicting affidavits *without* taking oral testimony at an evidentiary hearing.

Plaintiffs Cheryl Bischoff and Vicky Stites filed this action alleging that certain Florida traffic control laws are unconstitutional on their face and as applied. Presented with cross-motions for summary judgment on the merits, the district court ruled *sua sponte* that Plaintiffs' as applied challenge failed for lack of standing because the Plaintiffs were not threatened with arrest and therefore sustained no injury in fact. In so ruling, however, the court resolved central factual disputes and made witness credibility choices on issues material to standing just by relying on its reading of warring affidavits. Because we conclude that in this situation the district court was required to conduct an evidentiary hearing before resolving the disputed factual issues, and could not make credibility determinations based solely on the contents of a plainly conflicting paper record, we are constrained to reverse the dismissal of this action and remand to the district court to either hold an

[*]Honorable James H. Hancock, U.S. District Judge for the Northern District of Alabama, sitting by designation.

evidentiary hearing on the question of standing or to consider the merits of Plaintiffs' as applied challenge as raised in the parties' cross motions for summary judgment.

I.

The core facts of this case are straightforward and squarely in dispute. On December 29, 1997, Plaintiffs Bischoff and Stites, along with other religious activists representing a variety of organizations, participated in a demonstration to protest what they perceived to be Walt Disney World's support of homosexuality. The demonstration occurred along the narrow, grassy islands that border the heavily-trafficked intersection of Irlo Bronson Memorial Highway and Old Vineland Road in Osceola County, Florida. The activists carried signs and handbills expressing their criticism of Walt Disney World's policies regarding homosexuals. When motorists stopped at traffic lights, some of the activists distributed their handbills to them.

The demonstration drew the attention of the Osceola County Sheriff's Department. The officers complained to the activists that the demonstration was backing up traffic. They warned the demonstrators not to impede the flow of traffic and to "stay off the roadway or they would be arrested." Three demonstrators, Phillip Benham, Matthew Bowman, and Seth Marschke, were arrested.[1] The officers stated

---

[1]Benham, Bowman, and Marschke were charged with violating chapters 316.2045 and 316.2055 of the Florida Uniform Traffic Control Law. The relevant provisions of chapter 316.2045 are as follows:

> (1) It is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon; and any person or persons who violate the provisions of this subsection, upon conviction, shall be cited for a pedestrian violation, punishable as provided in chapter 318.

> (2) It is unlawful, without proper authorization or a lawful permit, for any person or persons willfully to obstruct the free convenient, and normal use of any public street, highway, or road by any of the means specified in subsection (1) in order to solicit. Any person who violates the provisions of this subsection is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083. Organizations qualified under s. 501(c)(3) of the Internal Revenue Code and registered pursuant to chapter 496, or persons or organizations acting on their behalf are exempted from the provisions of this subsection for activities on streets or roads not maintained by the state. Permits for the use of any portion of a state-maintained road or right-of-way shall be

in affidavits that these three activists were arrested because they entered the roadway and impeded the flow of traffic. While Bischoff and Stites concede that Bowman and Marschke entered the shoulder of the intersection before being arrested, they claim that Bowman and Marschke did not enter the traffic lanes, and that Benham simply stood on the grassy median and did not distribute handbills at all. Plaintiffs deny that any of the men impeded the flow of traffic.

Plaintiffs state in their affidavits[2] that they were engaged in the same handbilling activities as Bowman and Marschke, that they were specifically threatened with arrest, and that, following the arrest of Benham, Bowman, and Marschke, they and the remaining activists were told to stop distributing handbills and to abandon the intersection. Plaintiffs say they would like to return to the intersection to distribute handbills but have not done so for fear they will be arrested.

On May 18, 1998, Bischoff and Stites filed a Complaint against Osceola County, Florida alleging that Florida Uniform Traffic Control Law chapters 316.2055 and 316.2045 were unconstitutional both as applied and on their face. Plaintiffs sought declaratory and injunctive relief to prevent Osceola County from applying the laws to prevent their handbilling activities. On June 9, 1998, Osceola County filed a motion to dismiss on the grounds that the Complaint failed to state a cause of action against it because it had no connection to or power over the enactment or enforcement of the statutes at issue. In response to Osceola

---

> required only for those purposes and in the manner set out in s. 337.406.
>
> (3) Permits for the use of any street, road, or right-of-way not maintained by the state may be issued by the appropriate local government.
>
> (4) Nothing in this section shall be construed to inhibit political campaigning on the public right-of-way or to require a permit for such activity.

Chapter 316.2055 provides:

> It is unlawful for any person on a public street, highway, or sidewalk in the state to throw into, or attempt to throw into, any motor vehicle, or offer, or attempt to offer, to any occupant of any motor vehicle, whether standing or moving, or to place or throw into any motor vehicle any advertising or soliciting materials or to cause or secure any person or persons to do any one of such unlawful acts.

[2]Plaintiffs' Complaint and Amended Complaint were both verified. Allegations of facts contained in them are included when referring to affidavits of Plaintiffs'.

County's motion to dismiss, Plaintiffs filed an Amended Complaint on July 8, 1998. The Amended Complaint added Osceola County Sheriff Charles Croft, acting in his official capacity, as a Defendant in the action. Plaintiffs again alleged that the challenged statutes were unconstitutional both as applied and on their face and sought declaratory and injunctive relief. Soon thereafter, Sheriff Croft filed a motion to dismiss, or in the alternative for summary judgment. On July 30, 1998, Osceola County also filed a motion to dismiss. Plaintiffs, in turn, filed a cross motion for summary judgment.

On February 2, 1999, in response to the cross motions for summary judgment, the district court denied Plaintiffs' motion for summary judgment and dismissed the action. First, the court held that Plaintiffs "lack standing to challenge the statutes as applied because they cannot establish that they suffered an actual or threatened injury sufficient to ensure that the court would not be rendering an advisory opinion."[3] Order at 6. Next, apparently finding that Plaintiffs did have standing to bring their facial challenge, the court denied Plaintiffs' overbreadth claim on the merits. The court held that Plaintiffs' facial challenge failed because the statutes were not substantially overbroad but were "merely traffic laws that regulate conduct in a neutral manner." Order at 11.

II.

As an initial matter, we emphasize that the district court correctly reached out and considered the question of standing *sua sponte.* As the Supreme Court made clear in *United States v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), "[t]he question of standing is not subject to waiver .... 'The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines.' " *Id.* at 742, 115 S.Ct. at 2435 (quoting *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230-31, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990)) (internal quotation marks omitted); *see also University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir.1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking"); *Cuban American Bar Ass'n, Inc. v. Christopher,* 43 F.3d 1412, 1422 (11th

---

[3]As a result of this holding, the court did not address the merits of Plaintiffs' as applied challenge.

Cir.1995) (explaining that " '[b]efore rendering a decision ... every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based;  and this obligation on the court to examine its own jurisdiction continues at each stage of the proceedings, even if no party raises the jurisdictional issue and both parties are prepared to concede it' ") (quoting *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 759 (11th Cir.1991));  *Alabama v. United States Envtl. Protection Agency,* 871 F.2d 1548, 1554 (11th Cir.1989) (noting that "[s]tanding is a jurisdictional prerequisite to suit in federal court") (citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 475- 76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

The party invoking federal jurisdiction bears the burden of proving standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  Moreover, each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Therefore, when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing.  However, when standing is raised at the summary judgment stage, the plaintiff can no longer rest on "mere allegations." *See id.* at 561, 112 S.Ct. at 2137.  Instead, the plaintiff must " 'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of the summary judgment motion will be taken to be true." *Id.  See also Wilson v. State Bar of Georgia,* 132 F.3d 1422, 1427 (11th Cir.1998);  *Church v. Huntsville,* 30 F.3d 1332, 1336 (11th Cir.1994);  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 806 (11th Cir.1993).  In *Haase v. Sessions,* 835 F.2d 902 (D.C.Cir.1987), the D.C. Court of Appeals nicely summarized the various procedural methods by which a district court may come to address standing.  According to the court:

> [A] defendant's challenge to a plaintiff's standing can take two forms:  a motion to dismiss, which is based exclusively on plaintiff's pleadings, and a motion for summary judgment, in which evidence, not pleadings, pertinent to standing are evaluated by the district court.  In both instances, disputed facts must be construed in the light most favorable to plaintiff.  In addition to these two party-initiated motions, the court on its own initiative may undertake evidentiary hearings, even in the context of a motion to dismiss.

*Id.* at 904.[4]

A.

As stated previously, in this case, standing was not raised by the Defendants in either their motion to dismiss or their motion for summary judgment but was decided by the district court *sua sponte* in response to the parties' cross motions for summary judgment and, notably, was decided without an evidentiary hearing. Moreover, it is clear that the district court based its standing determination on its judgments regarding the credibility of the affidavits presented by Plaintiffs and Defendants. The court concluded that "[a]lthough the plaintiffs assert that they suffered an injury because a particular officer threatened them with arrest, the undisputed evidence shows that the plaintiffs are seeking standing not because they suffered an injury themselves but instead because their companions suffered an injury." Order at 7. According to the district court, Plaintiffs did not face a real threat of arrest because "the officers' affidavits show that the officers only arrested those who obstructed traffic, and both parties agree that the plaintiffs did not, and never intended to, obstruct the flow of traffic."[5] Order at 7. The court referred to disputed questions of fact as undisputed and clearly disbelieved Plaintiffs' testimony that they were threatened with arrest for engaging in exactly the same behavior as did those individuals who were arrested. The district court simply credited the affidavits provided by the Sheriff's Department's officers over those provided by the Plaintiffs. The core question before us on appeal, therefore, is whether a district court faced with warring affidavits can make judgments regarding witness credibility and findings of disputed fact essential to its standing determination without holding an evidentiary hearing.

Our Circuit has suggested, and other circuits have made clear, that a district court *cannot* decide disputed factual questions or make findings of credibility essential to the question of standing on the paper record alone but *must* hold an evidentiary hearing. In *Steele v. National Firearms Act Branch,* 755 F.2d 1410

[4]The D.C. Court of Appeals explained that a motion to dismiss for lack of standing brought pursuant to Rule 12(b)(1) does not convert into a motion for summary judgment simply because the court looks beyond the pleadings. Instead, the district court may, within the scope of a Rule 12(b)(1) proceeding, initiate a factual inquiry. *Haase,* 835 F.2d at 906-08.

[5]Plaintiffs deny that Marschke, Bowman, and Benham ever obstructed traffic prior to their arrest.

(11th Cir.1985), we explained that when determining standing, a district court should resolve disputed factual issues either at a pretrial evidentiary hearing or at trial. *Steele* involved a challenge to regulations promulgated by the Secretary of the Treasury setting forth requirements that had to be met in order to obtain Treasury approval for the transfer of certain types of firearms. The plaintiff sued various officials who refused to sign a form authorizing him to sell regulated firearms and asked the court to declare that the defendants' refusal to sign the form was arbitrary and capricious. The district court granted defendants' motion to dismiss for failure to state a claim. On appeal we addressed the question of standing even though this issue had not been raised below. *Id.* at 1413. We held that based on the evidence before the district court, consisting of the pleadings and exhibits, we could not determine if the plaintiff actually had standing to bring his case. We then remanded to the district court to give the plaintiff the opportunity to present evidence sufficient to permit the district court to resolve the standing question. In dicta, we discussed the evidentiary burdens placed on the plaintiff to prove standing at different stages of litigation and the obligations of a district court when faced with disputed questions of fact. We explained:

> If a defendant moves to dismiss a complaint for lack of standing, a court must accept as true all of the plaintiff's material allegations. A court may treat a motion to dismiss as one for summary judgment, thereby requiring that a plaintiff provide affidavits supporting factual allegations made in the complaint. *Disputed factual issues may be resolved at a pretrial evidentiary hearing or during the course of trial.*

*Id.* at 1414 (emphasis added) (internal citations omitted).

The First and Fifth Circuits have been even more explicit about the need to hold an evidentiary hearing before resolving disputed factual questions material to the determination of standing. In *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598 (5th Cir.1982), the Fifth Circuit reviewed the district court's grant of defendant's motion to dismiss for want of standing. The district court based its standing conclusion on its factual finding that plaintiff's agreement with a bank to assign to him the legal claims of his former company was champertous. The court of appeals vacated the district court's order concluding that the district court erred in making a ruling regarding standing based on its determination of disputed facts without first holding an evidentiary hearing. *Id.* at 602 (holding that "the trial court erred in not holding an evidentiary hearing

on the issue of Samford's standing to prosecute this action. As discussed [ ], Samford's standing or its absence is based upon several disputed issues of fact. Thus, a summary disposition of the type made by the trial court was inappropriate.").

In *Barrett Computer Services, Inc. v. PDA, Inc.,* 884 F.2d 214 (5th Cir.1989), the Fifth Circuit again made clear that disputed factual issues material to standing must be determined not on the record but with an evidentiary hearing. In *Barrett,* the district court granted defendant's motion for summary judgment for lack of standing. The district court held that the plaintiff had not presented evidence sufficient to raise a genuine issue of material fact regarding whether it possessed the privity of contract necessary for it to have standing because the court did not credit the affidavit that the plaintiff had relied on for this purpose. The district court found the affidavit was conclusory and therefore valueless as evidence of standing. *Id.* at 215. The court of appeals disagreed that the affidavit was conclusory. Once the court of appeals credited the affidavit it was faced with contradictory evidence on the question of standing thereby making summary judgment inappropriate. *Id.* at 217-18. As the court explained:

> [W]e find that BCS succeeded in putting forth evidence supporting its claim of privity—and, thereby, standing—in relation to the PDA-American Excel contract. As BCS is only required, at the summary judgment stage, to bring forth sufficient evidence of the essential elements on which it bears the burden of proof, we find that the district court erred in granting summary judgment to PDA and dismissing BCS' claims on the merits.... [T]he evidence presented suffices to establish the existence of a genuine fact issue regarding BCS' standing to bring the claims alleged in its original complaint.

*Id.* at 218. The court of appeals then remanded the case to the district court to resolve the disputed questions of fact by holding an evidentiary hearing on the matter. The court directed that "in a case in which considerations of standing can be severed from a resolution of the merits, a preliminary hearing—to resolve disputed factual issues determining standing—is an appropriate course. Such a hearing could result from a motion to dismiss for lack of subject matter jurisdiction. The issue of standing may also be raised upon the court's own motion." *Id.* at 220 (internal citations omitted).

Similarly, the First Circuit in *Munoz-Mendoza v. Pierce,* 711 F.2d 421 (1st Cir.1983), made clear that a district court must resolve disputed questions of fact relevant to standing either at trial or through a pretrial evidentiary hearing. In *Munoz-Mendoza,* the plaintiffs challenged a decision of the Department of Housing

and Urban Development (HUD) to grant money to Boston, Massachusetts for a commercial complex on the ground that HUD did not sufficiently study the negative effects the complex would have on the racial integration of neighborhoods in the area. The district court held that the plaintiffs lacked standing to challenge the agency action and dismissed their complaint for lack of subject matter jurisdiction without reaching the merits. *Id.* at 423. The court of appeals made clear that ordinarily a district court can decide disputed factual questions relevant to standing only at trial or at a pretrial evidentiary hearing. The First Circuit explained:

> Decisions of the Supreme Court and other federal courts suggest that factual issues concerning the existence of "injury in fact" are to be resolved much like any other factual issue.... Where "injury" and "cause" are not obvious, the plaintiff must plead their existence in his complaint with a fair degree of specificity. The defendant thereafter can move for summary judgment, and obtain it unless affidavits or other submissions indicate that a genuine issue of material fact exists concerning standing. *The court must resolve any genuine disputed factual issue concerning standing, either through a pretrial evidentiary proceeding or a trial itself.*

*Id.* at 425 (emphasis added) (internal citations omitted).[6]

We find the logic of these cases persuasive and consistent with our general conviction that in both the criminal and civil context, credibility determinations generally are most reliable when the factfinder is able to observe the witness in person. As Wigmore explained in the context of the Confrontation Clause of the Sixth Amendment, in person confrontation of witnesses is important because it ensures "the presence of the witness before the tribunal so that his demeanor while testifying may furnish such evidence of his credibility as can be gathered therefrom.... [This principle] is satisfied if the witness, throughout the material part of his testimony, is before the tribunal where his demeanor can be adequately observed." 5 J. Wigmore, Evidence § 1399, p. 199 (J. Chadbourn rev.1974). In the civil context as well, the Supreme Court has recognized the importance of direct witness observation for making determinations of credibility. According to the Court, "[p]articularly where credibility and veracity are at issue ... written submissions are a wholly

---

[6]The court went on to explain that although the district court in that case had rested its standing conclusion on factual determinations made on the record alone, because neither party complained on appeal about the district court's decision to make factual findings or asked the court of appeals to reconsider these findings, it would review the district court's findings under the clearly erroneous standard. *Id.* at 426.

unsatisfactory basis for decision." *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970) (holding that termination of benefits under the Aid to Families with Dependent Children program must be preceded by a hearing). Thus, in a case where the evidence relating to standing is squarely in contradiction as to central matters *and* requires credibility findings, a district court cannot make those findings simply by relying on the paper record but must conduct a hearing at which it may evaluate the live testimony of the witnesses.

This is such a case. Here, the district court was presented with clearly contradictory affidavits bearing directly on the central question of whether the Plaintiffs suffered an injury in fact sufficient to establish standing. The affidavits of Plaintiffs Bischoff and Stites were consistent as were those of Officers Edward Levine and George L. Griffin, Jr., but the two sets of affidavits plainly were in direct conflict.

Plaintiffs stated: The Officers stated:

1. Bowman and Marschke were distributing fliers at the intersection. Bischoff, ¶ 8, Stites, ¶ 7. Bowman and Marschke stepped onto the shoulder of the roadway but did not enter the traffic lanes. Bischoff, ¶ 14, Stites, ¶ 13. 1. Bowman and Marschke entered the roadway and impeded the flow of traffic. Levine, ¶ 6.

2. Marschke, and Bowman did not obstruct the flow of traffic at the intersection. Bischoff, ¶ 13, Stites, ¶ 12. 2. Marschke and Bowman were arrested because they entered the roadway and impeded the flow of traffic. Levine, ¶ 8.

3. Benham stood in the grassy median prior to his arrest and had not distributed any literature. Bischoff, ¶¶ 8, 14, Stites, ¶¶ 7, 13. 3. Benham entered the roadway and impeded the flow of traffic. Griffin, ¶ 4.

4. Benham did not obstruct the flow of traffic at the intersection. Bischoff, ¶ 13, Stites, ¶ 12.
4. Benham was arrested because he entered the roadway and impeded the flow of traffic. Griffin, ¶ 6.

5. Benham stood in the grassy median, did not obstruct traffic, did not distribute literature, and was

arrested.  Bischoff, ¶ 5, Stites, ¶ 5.        5. Only those persons who entered the roadway and impeded the flow of traffic were arrested.  Those persons who stood in the median were not arrested.  Levine, ¶ 8, Griffin, ¶ 6.

6. Bischoff and Stites were engaged in "the exact same [handbilling] activity" as Bowman and Marschke but were not arrested.  Bischoff ¶ 8, Stites, ¶ 7.

7. Bischoff and Stites were each specifically threatened with arrest by an officer who identified herself as Officer Crawford.  Bischoff, ¶ 17, Stites, ¶ 16.

These affidavits are contradictory on several points essential to standing.  Thus, for example, while the officers state that only individuals who entered the roadway and impeded traffic were arrested, Plaintiffs say that the individuals who were arrested did not impede traffic and, notably, that Benham never left the grassy median.  In addition, while the officers' affidavits suggest that Plaintiffs were not really threatened with arrest because they did not enter the roadway or impede traffic,[7] the officers do not directly address or deny Plaintiffs' unambiguous averments that they were directly threatened with arrest despite the fact that they neither entered the roadway nor impeded traffic.  The question of whether the Plaintiffs were in fact threatened with arrest for their activities is crucial to the question of whether they suffered an injury in fact sufficient to establish standing.

In light of the conflicting affidavits in this case, we conclude that the district court erred by making disputed factual findings and judgments regarding witness credibility that were essential to its determination of standing *without* holding an evidentiary hearing.  As a result, we cannot defer to the district court's factual findings.  Instead, we must accept the evidence in the record as true and review the district court's order on

---

[7]In their opposition to Sheriff Croft's Motion for Summary Judgment, Plaintiffs state that they did not step into the roadway.  Plaintiffs use the definition of roadway provided in Fla. Stat. 316.003(42): "Roadway—the portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder."  In light of this definition, Plaintiffs' testimony that they engaged in exactly the same activity as Bowman and Marschke is entirely consistent with their statements that they did not enter the roadway, since they may have only entered the shoulder of the roadway.

standing as if it were made in response to a motion for summary judgment.[8]

## B.

Accepting Plaintiffs' affidavits as true (as we must at this stage), we conclude that Plaintiffs have established standing.  In order to prove standing, Plaintiffs must satisfy the doctrine's constitutional requirements.  *Huntsville,* 30 F.3d at 1335-36.  To satisfy the constitutional standing requirements, a plaintiff must make three showings:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' "  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

---

[8]Plaintiffs contend that because the court ruled on standing *sua sponte* we should apply the standard of review that is appropriate when such determinations are made at the motion to dismiss stage—requiring only that Plaintiffs have adequately alleged standing without inquiring as to whether they have presented actual evidence sufficient to demonstrate standing.  Plaintiffs look for support to *Church v. City of Huntsville* in which we considered "the 'degree of evidence' by which the plaintiffs must have established their standing" at an early stage of litigation where a preliminary injunction is being sought.  *Huntsville,* 30 F.3d at 1336.  In *Huntsville* we applied the same evidentiary burden imposed in cases where standing is raised on a motion to dismiss and focused only on the adequacy of the complaint.  We explained:

> It might well be unfair [ ] to impose a standing burden beyond the sufficiency of the allegations of the pleadings on a plaintiff seeking a preliminary injunction, unless the defendant puts the plaintiff on notice that standing is contested.... In these particular circumstances, and for present purposes only, we think that the plaintiffs' standing should be judged on the sufficiency of the allegations of the complaint, with any preliminary hearing evidence favorable to the plaintiffs on standing treated as additional allegations of the complaint.

*Id.* at 1336.

In *Huntsville,* we applied the more lenient standard of review because the standing issue was decided by the district court so early in the case and without any notice to plaintiffs that standing was at issue.  In this case, although the Defendants did not make an issue of standing, the Plaintiffs themselves raised the issue in their Opposition to Sheriff Croft's Motion for Summary Judgment.  Moreover, this case had moved well beyond the preliminary stages at the time when the district court made its *sua sponte* ruling regarding standing in response to the cross motions for summary judgment.  For these reasons, we review the district court's ultimate conclusion regarding standing as if it were made in response to a motion for summary judgment.  In practice, our choice is immaterial since Plaintiffs have presented sufficient allegations and evidence to survive either test.

*Lujan,* 504 U.S. at 560-61, 112 S.Ct. at 2136 (internal citations and footnote omitted). *See also Huntsville,* 30 F.3d at 1335 (quoting *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758); *Harris v. Evans,* 20 F.3d 1118, 1121 (11th Cir.1994).

The Supreme Court has also instructed courts to consider three prudential principles which may counsel for judicial restraint in considering the plaintiff's claims. The prudential considerations include: "1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Saladin v. City of Milledgeville,* 812 F.2d 687, 690 (11th Cir.1987) (citing *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)); *see also Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1203 n. 43 (11th Cir.1991).

The requirements for standing are somewhat more lenient for facial challenges to statutes on the grounds of overbreadth. In the First Amendment context, plaintiffs can challenge the constitutionality of a statute that has not been unconstitutionally applied to them. *See Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 955-57, 104 S.Ct. 2839, 2845-47, 81 L.Ed.2d 786 (1984); *National Council for Improved Health v. Shalala,* 122 F.3d 878, 882-83 (10th Cir.1997); *Bordell v. General Electric Co.,* 922 F.2d 1057, 1060-61 (2d Cir.1991). That is, plaintiffs can challenge a statute as overbroad even if their particular conduct is not constitutionally protected. As the Supreme Court explained in *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915-16, 37 L.Ed.2d 830 (1973):

> [T]he Court has altered its traditional rules of standing to permit—in the First Amendment area—"attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Dombrowski v. Pfister,* 380 U.S. at 486, 85 S.Ct. at 1121. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

However, even under the more lenient requirements for standing applicable to First Amendment

overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some *injury in fact* as a result of the defendant's actions. *See Virginia v. American Booksellers Assoc. Inc.,* 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (explaining that to facially challenge the constitutionality of a statute on overbreadth grounds the plaintiff must "establish at an irreducible minimum an injury in fact; that is, there must be some 'threatened or actual injury resulting from the putatively illegal action.....' ") (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (internal quotation omitted)); *Munson,* 467 U.S. at 958, 104 S.Ct. at 2847 (emphasizing that plaintiff challenging the constitutionality of a statute as overbroad, although it need not show that its own First Amendment rights have been violated, must still show an "injury in fact" caused by the challenged statute); *National Council for Improved Health,* 122 F.3d at 883 (noting that "although the overbreadth doctrine allows one whose First Amendment rights have not been violated to assert a facial challenge on behalf of others whose rights may be infringed, it does not eliminate the need for the plaintiff to demonstrate its own cognizable injury in fact"); *Bordell,* 922 F.2d at 1061 (explaining that "[t]his slender exception to the prudential limits on standing [allowing litigants to seek redress for violations of the rights of others] [ ] does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction. Rather, the exception only allows those who have suffered some cognizable injury, but whose conduct is not protected under the First Amendment, to assert the constitutional rights of others.") (citations omitted).

Plaintiffs' evidence, taken as true, is sufficient to raise a genuine issue of material fact regarding standing to defeat a motion for summary judgment on this ground. First, Plaintiffs have asserted in their affidavits that they suffered a specific and concrete injury in fact; namely, they were threatened with arrest for their handbilling activities which were exactly the same activities as those for which their co-demonstrators were arrested and charged under the statutes. Plaintiff Bischoff states in her affidavit: "A female Osceola Sheriff's department officer, who identified herself as Officer Crawford, threatened to arrest all present and specifically sought to arrest Mr. Benham and me." Bischoff Aff. ¶ 17. Plaintiff Stites also

testified that a female Sheriff's department officer threatened to arrest all present and specifically sought to arrest Stites and Benham. Stites Aff. ¶ 16. Taken as true, Plaintiffs' testimony that they were threatened with arrest for engaging in free speech activities is evidence of an actual and concrete injury wholly adequate to satisfy the injury in fact requirement of standing. *See Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215-16, 39 L.Ed.2d 505 (1974) (holding that plaintiff had standing to challenge constitutionality of a Georgia criminal trespass law because he was warned twice to stop handbilling and was told that if he engaged in the activity again he would be arrested); *Wilson v. State Bar of Georgia,* 132 F.3d 1422, 1428 (11th Cir.1998) (explaining that "standing exists at the summary judgment stage when the plaintiff has submitted evidence indicating 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution' ") (quoting *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979)); *Jacobs v. Florida Bar,* 50 F.3d 901, 904 (11th Cir.1995) (noting that a plaintiff may establish standing by showing that he was threatened with prosecution, that prosecution is likely, or that there is a credible threat of prosecution); *Harris v. Evans,* 20 F.3d 1118, 1125 (11th Cir.1994) (describing the threat of prosecution as a concrete injury for purposes of establishing standing).

Second, Plaintiffs have presented evidence showing a direct causal link between the injury they suffered—the threat of arrest—and Defendants' enforcement of the challenged statutes. Both Plaintiffs testified that they were threatened with arrest for engaging in the same handbilling conduct that resulted in the arrest and charge under the challenged statutes of Bowman, and Marschke. Plaintiff Bischoff testified that Bowman and Marschke were arrested for distributing fliers at the intersection and that she was involved "in the exact same activity." Bischoff Aff. ¶ 8. Plaintiff Stites similarly testified that Bowman and Marschke were arrested while distributing fliers at the intersection and she was involved "in the exact same activity." Stites Aff. ¶ 7. Finally, it is clear that a decision in Plaintiffs' favor declaring the chapters unconstitutional, either on their face or as applied to Plaintiffs, would redress the injury of being threatened with arrest for engaging in constitutionally protected activity.

Plaintiffs satisfy the prudential considerations of standing as well. First, Plaintiffs' Amended Complaint does "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Valley Forge,* 454 U.S. at 475, 102 S.Ct. at 760 (quoting *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)). Plaintiffs' Amended Complaint unambiguously alleges that the statutes at issue and the Defendants' enforcement of these statutes violates their First Amendment rights. *See Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 2 F.3d 1514, 1526 (11th Cir.1993) (finding that "[a]ny citizen's interest in preventing violations of [her First Amendment] rights is more than marginally related to the constitutional provision ...."). Second, the Amended Complaint raises specific grievances regarding both the application and the breadth of the statutes at issue. Plaintiffs' grievances are not abstract and generalized but are specific and concrete challenges to Defendants' threatened enforcement of these statutes against Plaintiffs. Third, and most notably, Plaintiffs are asserting their own legal rights and interests rather than those of third parties. Although Plaintiffs were not themselves arrested, as were their fellow demonstrators Marschke, Bowman, and Benham, they have presented evidence that they were specifically threatened with arrest, thereby giving them their own legally cognizable interest in challenging the constitutionality of the statutes at issue. On this record, the Plaintiffs have presented sufficient evidence to raise a genuine issue of fact regarding whether they have standing to pursue their claims.

Accordingly, we conclude that in this case, where the district court was faced with warring affidavits on issues essential to standing, the court erred in making findings of disputed facts and judgments regarding credibility, on which it then based its standing conclusion, without holding an evidentiary hearing. As a result, we cannot defer to the district court's factual findings. Instead, we accept Plaintiffs' evidence as true and review *de novo* the district court's determination regarding standing as though it were made in response to a motion for summary judgment. Here, the Plaintiffs have presented sufficient evidence of standing to survive summary judgment. We therefore reverse the district court's order dismissing Plaintiffs' action for lack of standing and remand to the district court either to hold an evidentiary hearing on the question of

standing or to rule on the merits of Plaintiffs' as applied challenge as raised in the parties' cross motions for

summary judgment.[9]  We refrain from reviewing the district court's ruling on the merits of Plaintiffs' facial

challenge at this time.[10]

REVERSED AND REMANDED.

---

[9]We add that the district court cannot grant summary judgment in favor of the Plaintiffs on their as applied claim without first finding, after appropriate review, that they have standing to assert such a claim.

[10]We note that if the district court determines, either at an evidentiary hearing or at trial, that the Plaintiffs were not actually threatened with arrest, then the Plaintiffs have not sustained a specific injury in fact and plainly, therefore, cannot bring either their as applied or facial challenge to the statutes.